OPINION
{¶ 1} Michael G. Knight was convicted by a jury in the Greene County Court of Common Pleas of two counts of aggravated robbery. The first charge ("Count Two") arose out of the robbery of a CD Connection store on February 28, 2002; the second charge ("Count Three") stemmed from the robbery of Kwik and Kold Drive Through on March 1, 2002. A third aggravated robbery charge ("Count One"), based on a February 24, 2002, robbery, had been dismissed. Knight was sentenced to nine years of incarceration on each count, to be served consecutively, for a total of eighteen years of incarceration.
 {¶ 2} Knight asserts two assignments of error on appeal.
 {¶ 3} "I. Whether the trial court erred in overruling Defendant's motion for dismissal due to the unconstitutional and unreasonable length of time between indictment, arrest and trial of defendant in this matter."
 {¶ 4} In his first assignment of error, Knight claims that he was brought to trial more than 270 days after his arrest, in violation of R.C. 2945.71. He asserts that he served a total of 231 calendar days in jail from the date of his arrest until his trial began. Taking into account 84 days that were tolled due to defense motions and 18 days that were charged on a one-for-one basis, Knight calculates that he served 405 days of incarceration for purposes of calculating the state's speedy trial requirement. The state does not dispute Knight's calculations. However, it argues that Knight's motion to dismiss on speedy trial grounds was untimely, and thus he waived any challenge based on the state's failure to comply with R.C. 2945.71.
 {¶ 5} As we stated in State v. Hart, Montgomery App. No. 19556, 2003-Ohio-5327:
 {¶ 6} "The right to a speedy trial is guaranteed by theSixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. In Ohio, R.C. 2945.71
requires the State to bring a felony defendant to trial within two hundred and seventy days of arrest. R.C. 2945.71(C). Each day during which the accused is held in jail in lieu of bail on the pending charge is counted as three pursuant to the triple-count provision of R.C. 2945.71(E).
 {¶ 7} "Speedy trial provisions must be asserted by a defendant in a timely fashion or they are waived. State v.Bishop, Vinton App. No. 02CA573, ¶ 16, 2003-Ohio-1385. `Thus, in order for an accused to procure his release on the basis of a denial of his right to a speedy trial, he must show affirmative action on his part to secure a speedy trial.' Partsch v.Haskins (1963), 175 O.S. 139, 140. Additionally, R.C. 2945.73(B) expressly provides that a motion for discharge must be made at or prior to the commencement of trial. If a motion is not made before commencement of trial, there is no provision for relief under the statute." Id. at ¶ 11-12.
 {¶ 8} R.C. 2945.73 does not specify the point at which a trial commences, for purposes of that statute. In State v.Wright (July 29, 1976), Cuyahoga App. No. 35040, the Eighth Appellate District concluded that, for purposes of R.C.2945.73(B), "a criminal trial commences when the parties appear before the court and announce that they are ready to proceed with trial and thereupon a jury trial is waived by the defendant or the parties start to impanel a jury." Id.; see State v. Kusinko
(Mar. 16, 1989), Cuyahoga App. No. 55106. The Wright court relied, in part, upon the Supreme Court of Ohio's pronouncement in Palmer v. State (1885), 42 Ohio St. 596, 601-602, that the impaneling a jury was part of a trial. The First Appellate District has likewise held that, for purposes of Ohio's speedy trial requirements, a trial commences when voir dire begins.State v. Cook (Apr. 4, 1990), Hamilton App. No. C-890066. Other courts have indicated that a trial has commenced when the jury is impaneled and sworn. State v. Page (June 25, 1984), Stark App. Nos. CA-6326, CA-6334 ("It is clear that a trial has commenced [for purposes of R.C. 4529.73] when the jury is impaneled and sworn, which was done in this case."); see also Wagner v. State
(1885), 42 Ohio St. 537 (for purposes of supreme court jurisdiction under Rev. Stats. § 7356, "trial" commences, at least, immediately after the jury is sworn; the court found it unnecessary to address, at that time, whether "trial" included the impaneling of a jury).
 {¶ 9} We note that the Sixth Circuit has likewise held, for purposes of the federal Speedy Trial Act, 18 U.S. Code § 3161 et seq., that a trial is considered to have begun when the voir dire process begins. United States v. Warren (C.A. 6, 1992),973 F.2d 1304, 1307; United States v. Scaife (C.A. 6, 1984),749 F.2d 338, 343. Although we are not bound by Sixth Circuit authority, it is persuasive, particularly in light of the fact that the federal constitution and speedy trial statute provide similar protections to those guaranteed by the Ohio constitution and statute. See State v. O'Brien (1987), 34 Ohio St.3d 7,516 N.E.2d 218 ("the same right" to a speedy trial is assured under Section 10, Article I of the Ohio Constitution and the Sixth andFourteenth Amendments to the United States Constitution); see also Cook, supra (finding persuasive the approaches taken by federal appeals courts concerning the federal Speedy Trial Act).
 {¶ 10} Upon review of the foregoing authority, we are persuaded that, for purposes of Ohio's speedy trial statute, a trial commences when voir dire begins. We caution, as have many courts, that the trial court may not attempt to circumvent the spirit of the statute "by conducting voir dire within the statutory time limits and then ordering a prolonged recess with an intent to pay mere `lip service' to the Act's requirements."Scaife, 749 F.2d at 343.
 {¶ 11} Turning to the case before us, Knight's trial began on December 4, 2002. On that date, a jury was impaneled and sworn, and both the state and Knight presented their opening statements. Knight filed his motion to dismiss on the morning of December 5, 2002, prior to the presentation of any witness testimony. Because Knight failed to file a motion for discharge prior to voir dire, his motion was untimely and his speedy trial challenge has been waived. We therefore need not reach the issue of whether the trial court properly concluded that the December 4, 2002, trial date was reasonable and that the state did not violate R.C.2945.71.
 {¶ 12} Knight's first assignment of error is overruled.
 {¶ 13} "II. Whether the Defendant's Conviction on count two of the indictment involving the CD Connection for aggravated robbery was supported by insufficient evidence in that no testimony was produced at trial to indicate the defendant possessed a deadly weapon, threatened with or brandished a deadly weapon during the offense and no testimony was produced at trial to describe any deadly weapon which the defendant could have possessed during the offense or that any object the defendant could have possessed was a deadly weapon as a result of [its] shape, size or material of manufacture."
 {¶ 14} In his second assignment of error, Knight claims that the state failed to present sufficient evidence that he possessed a deadly weapon when he allegedly committed the robbery of the CD Connection store on February 28, 2002. He contends that there was no evidence that he actually possessed a deadly weapon nor that he implied, through his actions or words, that he possessed one. Knight further points to the testimony of Tasha Edwards, who indicated that she gave Knight a BB gun on March 1, 2002, after the CD Connection robbery occurred. Bambi Kukuk likewise testified that Knight obtained a BB gun on March 1, 2002.
 {¶ 15} Crim.R. 29(A) provides that the trial court shall enter a judgment of acquittal on one or more offenses charged in the indictment if the evidence is insufficient to sustain a conviction of such offense or offenses. "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541, citing Black's Law Dictionary (6th Ed. 1990) 1433. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421, 430,1997-Ohio-372, 683 N.E.2d 1096, citing Jackson v. Virginia
(1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.E.2d 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 16} The aggravated robbery statute, R.C. 2911.01, provides, in part: "(A) No person, in attempting or committing a theft offense * * * shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C.2911.01(A)(1). R.C. 2923.11(A) defines a deadly weapon as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."
 {¶ 17} Whether the state has presented sufficient evidence of the actual possession of a deadly weapon is judged based on the totality of the circumstances. State v. Vondenberg (1980),61 Ohio St.2d 285, 15 O.O.3d 349, 401 N.E.2d 437; State v. Green
(1996), 117 Ohio App.3d 644, 691 N.E.2d 316. As stated by the Supreme Court of Ohio, "[f]or purposes of establishing the crime of aggravated robbery, a jury is entitled to draw all reasonable inferences from the evidence presented that the robbery was committed with the use of a gun * * *." Vondenberg, syllabus. It is not necessary that the defendant had actually displayed the weapon in order to establish that he had possessed one.
 {¶ 18} As recognized by both parties, the factfinder may infer that the defendant possessed a deadly weapon based on his words and conduct. In State v. Haskins, Erie App. No. E-01-016, 2003-Ohio-70, the court of appeals upheld the conviction for the aggravated robbery of a gas station, even though no gun had been displayed or found. The court reasoned: "In this case, the attendant in the gas station robbery testified that appellant threatened `Are you going to give me the money or do I have to pull this pistol out of my pocket?' The attendant responded immediately by putting up her hands, fearing that appellant did, in fact, have a gun. Although no weapon was actually seen or found, credible evidence was presented from which the jury could have found beyond a reasonable doubt that appellant did, in fact, have a deadly weapon on or about his person or under his control. Therefore, sufficient evidence was presented going to all the elements of the crime and the conviction was not against the manifest weight of the evidence." Id. ¶ 42; see Green, supra (state presented sufficient evidence of a deadly weapon when he made several threats to "blow the heads off" the victims, used his hand in a manner consistent with having a concealed gun, and the victims surrendered money based on their suspicions that he was armed and could carry out his threat); State v. Cook,
Franklin App. Nos. 02AP-896, and 02AP-897, 2003-Ohio-2483 (sufficient evidence of aggravated robbery where the defendant concealed his hand and indicated that he had a gun and would kill the victims); State v. Jeffers (2001), 143 Ohio App.3d 91,757 N.E.2d 417.
 {¶ 19} Knight argues that the state did not provide sufficient evidence of deadly weapon, because he made no verbal threat that indicated the presence and operability of a hidden gun. We disagree that a verbal threat is necessarily required in order to infer that a defendant possesses a deadly weapon. Although addressing a firearm specification, we find State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, instructive. In Thompkins, the defendant robbed a Cincinnati bakery by brandishing a gun and by advising the store clerk that it was a "holdup" and to be "quick, quick" while taking the money from the cash register. The court of appeals had held that there was no evidence that the gun was operable, because the only evidence regarding the gun was the clerk's testimony that the defendant had one. Citing its prior holdings in State v. Dixon
(1995), 71 Ohio St.3d 608, 646 N.E.2d 453, and State v. Murphy
(1990), 49 Ohio St.3d 206, 551 N.E.2d 932, the supreme court reversed, reasoning that "it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." Id. at 384; see Nelson, supra (indicating that an implied threat may support an inference that the apparent firearm is operable). Thus, under the foregoing authority, both a weapon's existence and its operability may be inferred from the facts and circumstances. Suffice it to say, there may be circumstances where the defendant's conduct alone makes clear that he holds a hidden weapon and that he could use it if the victim fails to comply with his instructions.
 {¶ 20} The case before us presents such a circumstance, because the jury was required to infer that Knight possessed a deadly weapon without his displaying, brandishing or using a gun and without any explicit threat indicating that he had a gun. Knight argues that "the clerk testified that the Defendant had both hands in his jacket pockets upon entering the store and said only to open the register." If Kristen Wilson, the CD Connection employee, had merely testified that Knight had approached her with his hands in his pockets, we would agree that the state's evidence was insufficient. However, Wilson testified that she believed that Knight possessed a gun and that she gave him access to the cash register on the belief that he was armed with a gun:
 {¶ 21} WILSON: "All he did was come up to the counter and he had his hand in his pocket."
 {¶ 22} PROSECUTOR: "All right."
 {¶ 23} WILSON: "And it just seemed like he had a gun in his pocket."
 {¶ 24} PROSECUTOR: "Okay. Can you stand up and demonstrate or just show the Jury what you saw?"
 {¶ 25} WILSON: "Yeah, he just came up to the counter and he had both hands in his pocket, and the right hand just — was just — was out and looked like he had a small gun in his pocket." * * *
 {¶ 26} PROSECUTOR: "You said you saw this, what you believe to be a gun in his pocket. What did you base that conclusion upon?"
 {¶ 27} WILSON: "Just the shape that it was taking like in his pocket."
 {¶ 28} Wilson subsequently testified that Knight did not display a gun when he took both hands out of pockets to grab the money from the cash register, thus causing her to question whether he, in fact, had a gun. However, she further testified that she had opened the cash register drawer for him, because she had believed that he possessed a gun.
 {¶ 29} Construing the evidence in the light most favorable to the prosecution, we conclude that the state's evidence was legally sufficient. Wilson testified that Knight's right hand was "out" compared to his other hand, thus suggesting a concealed gun. Notably, Wilson demonstrated to the jury how Knight held his hands. Having only a transcribed record of the trial court proceedings and considering that we must construe the evidence in favor of the prosecution, we presume that Wilson's demonstration was sufficient to support a reasonable inference that Knight possessed a deadly weapon. Moreover, Wilson testified that she had opened the register, because she believed that Knight held a gun. Thus, Knight obtained the money from Wilson based on her belief that he was armed with a gun — a belief that was based on Knight's actions. Accordingly, we conclude that Wilson's testimony, when construed in the state's favor, is legally sufficient to support the jury verdict.
 {¶ 30} Our conclusion is not altered by the fact that Bambi Kukuk and Tasha Edwards both testified that on March 1, 2002, prior to the Kwik Kold robbery, Edwards retrieved Arthur (aka Patrick) Brown's BB gun for Knight and that Knight used that weapon during the robbery. Although the record indicates that Knight used the BB gun during the March 1, 2002, robbery, there is no evidence regarding Knight's preparation for the robbery of the CD Connection. The record is silent on this issue. In other words, there is no evidence to indicate that Knight did not or could not have used a deadly weapon during the CD Connection robbery. See State v. Carothers, Cuyahoga App. No. 82860, 2004-Ohio-51 (state presented sufficient evidence of a firearm for purposes of the firearm specification based on defendant's threat to victim, even though the defendant's father testified that he only had a toy gun). As stated above, based on Wilson's testimony regarding Knight's conduct during the robbery, the state has presented sufficient evidence that Knight possessed a deadly weapon when he robbed the CD Connection on February 28, 2002.
 {¶ 31} Knight's second assignment of error is overruled.
 {¶ 32} The judgment of the trial court will be affirmed.
Judgment affirmed.
Fain, P.J., and Young, J., concur.