JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Aramis Watkins, appeals the firearm specification, R.C. 2941.145, in his conviction for aggravated robbery. He does not appeal the aggravated robbery conviction itself.
 {¶ 2} Around one o'clock in the morning in September, the victim was driving home from work when the tire on his car blew out on East 55th Street, just after he exited I-480. Unable to find someone to help him with the tire, he took a bus to East 55th and Euclid Avenue so he could catch a second bus home.
 {¶ 3} The victim went into a gas station near the bus stop to buy a snack when he noticed a young man enter and inquire about cigars. The victim returned to the bus stop, where three other men were also sitting. One was an older man talking to himself, another was the young man who had asked about cigars in the gas station, and the third a young man who, while using a cell phone, proceeded to cross the street and sit down.
 {¶ 4} The man with the cell phone recrossed the street back to the bus stop. He then walked behind the victim and put what the victim said felt like a gun to his side. The victim then recounted: "[H]e said, you know, what it is." The young man forced the victim to spread against the bus shelter while he rifled the victim's pockets. The other younger man paced back and forth in front of the victim.
 {¶ 5} During the robbery, a white SUV pulled up to the bus shelter. As soon as the robbery was over, these two men got into the SUV and it drove away.
 {¶ 6} Immediately, the victim called the police from a phone booth nearby. While the police were interviewing the victim, another police car stopped the white SUV, at which point a man in the back seat of the SUV fled on foot. Searching the SUV, the police discovered the victim's credit cards as well as a holster for a .38 revolver. They found a loaded .38 revolver outside the vehicle next to the rear passenger side door.
 {¶ 7} Although the victim misidentified who had been driving the SUV, he did positively identify some of his possessions taken in the robbery. Viewing a photo array, the victim identified defendant as the man at the bus stop who had held a gun to his side.
 {¶ 8} A woman driving the SUV stated that she had lent the vehicle to her nephew (a co-defendant) and that when he returned with the SUV, he had a friend named "Aramis" with him. She did not know Aramis' last name but picked defendant out of a photo array as the friend named Aramis who had been in her car that night.
 {¶ 9} Defendant presented the mother of his child as an alibi witness. She testified that he had been with her that evening and that, after he did the dishes, they watched T.V. and discussed his upcoming child support appointment. Both co-defendants also testified that they were not with defendant on the night of the robbery.
 {¶ 10} Defendant states one assignment of error:
I. The evidence was insufficient to support a three year firearm specification attendant to the charge of aggravated robbery.
 {¶ 11} Defendant argues that because no one actually saw a gun and because the victim testified he was not 100% certain that what he felt in his side was a gun, the state failed to prove the use of a firearm in the commission of the crime.
 {¶ 12} The firearm specification is described in R.C.2941.145, which states in pertinent part: the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense.
 {¶ 13} The definition of a firearm is found in R.C.2923.11(B):
(B)(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.
(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.
The case law interpreting this statute has evolved over the years. Initially, in State v. Gaines (1989), 46 Ohio St.3d 65, the Ohio Supreme Court held that "prior to imposition of an additional term of three years' actual incarceration for possession of a firearm during the commission of a felony, the state must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense." Id., syllabus.
 {¶ 14} The Court then modified its ruling in State v.Murphy (1990), 49 Ohio St.3d 206, when it clarified how the state could prove a firearm specification. Such proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime. (State v. Gaines
[1989], 46 Ohio St.3d 65, 545 N.E.2d 68, modified.)" Murphy,
syllabus.
 {¶ 15} More recently, the Court added circumstantial evidence as a basis for proof:
A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individualin control of the firearm. (State v. Murphy [1990],49 Ohio St.3d 206, 551 N.E.2d 932, State v. Jenks [1991],61 Ohio St.3d 259, 574 N.E.2d 492, and State v. Dixon [1995],71 Ohio St.3d 608, 646 N.E.2d 453, followed; R.C. 2923.11[B][1] and [2], construed and applied.)
State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph one of the syllabus, emphasis added.
 {¶ 16} The courts have differed in interpreting how much circumstantial evidence is enough to prove the existence of an operable firearm in the commission of a crime. Numerous cases support a conviction if the defendant states he has a gun and will use it, even if no one sees the gun and the gun is never produced at trial and therefore cannot be tested to determine whether it is operable. State v. Jeffers (2001),143 Ohio App.3d 91; State v. Haskins, Erie App. No E-01-016, 2003-Ohio-70.
 {¶ 17} Additionally, case law supports conviction when a defendant flashes what appears to be a gun, even if it is never proved to be a gun or to be operable. State v. Dixon (1995),71 Ohio St.3d 608; State v. Nelson (Aug. 18, 1995), Montgomery App. No. 14775. This is so even if the offender never states that he will use the gun if the victim does not comply with his orders; "the implicit threat of brandishing a firearm so as to threaten a victim is sufficient to establish its operability under R.C. 2923.11(B)." State v. McDade (Sept. 25, 1998), Lake App. No. 97-L-059, 1998 Ohio App. LEXIS 4533, at *33.
 {¶ 18} The question is how much circumstantial evidence will prove the existence of an operable firearm in the commission of a crime.
 {¶ 19} In State v. Kovacic, Ashtabula App. No. 2002-A-0032, 2003-Ohio-5219, discretionary appeal allowed,101 Ohio St.3d 1466, 2004-Ohio-819, the Eleventh Appellate District explained that "a statement by a defendant that he has a gun, without more, does not transform the so-called gun into a `firearm' for purposes of R.C. 2923.11 or 2941.145. To allow this conceptual morph would reduce the burden on the prosecution and thereby fracture appellant's due process rights." Id. ¶ 18. That court went on to state:
However, assuming arguendo, that appellant's statement and conduct were sufficient to establish, circumstantially, that appellant had a weapon within the purview of R.C. 2923.11(B), his blank declaration that he had a gun, without a greater indicia of evidence, is insufficient to prove operability. To wit, under the totality of the circumstances, the clerk never saw a gun nor any bullets and did not smell gunpowder; moreover, there is no evidence that appellant's statements or actions could be interpreted as explicit threats.
Id. ¶ 21, footnote omitted. The court further explained:
* * * as a matter of law and logic, that appellant's actions did not amount to an implicit threat insofar as appellant's declaration did not necessarily portend danger or express a desire to inflict injury on the clerk. Although appellant's hand was in his pocket and he indicated he had a gun, we cannot tacitly infer, from the surrounding circumstances, that he had an operable firearm.
Id. ¶ 22. Numerous other courts, however, have used a less stringent standard. In State v. Hampton Hamilton, App. No. C-010159, 2002-Ohio-1907, 2002 Ohio App. LEXIS 1543, the victim never saw the gun which was pushed against her back, but she felt it and the defendant told her that he had a gun. The First Appellate District held:
Our review of the record convinces us that the state's evidence on the three-year firearm specification was sufficient to withstand a Crim.R. 29 challenge. According to the evidence, Hampton grabbed the victim, placed something hard in her back, told her that he had a gun and ordered her to walk towards his van. A passerby observed these events and testified that it appeared that Hampton held a gun to the victim's back.
Id. at pgs. 38-39.
 {¶ 20} Most directly on point is State v. Knight, Greene App. No. 2003 CA14, 2004-Ohio-1941, in which the defendant, who had been charged with aggravated robbery, argued that the state failed to produce any evidence that he actually possessed a deadly weapon, in this case, a firearm. The district court held that a verbal threat was not necessary to "infer that a defendant possesses a deadly weapon." Id. ¶ 19. Applying Thompkins as analogous in the proof of a deadly weapon and the proof of an operable firearm, the court stated, "both a weapon's existence and its operability may be inferred from the facts and circumstances. Suffice it to say, there may be circumstances where the defendant's conduct alone makes clear that he holds a hidden weapon and that he could use it if the victim fails to comply with his instructions." Id. The Second Appellate District held, therefore, "the jury was required to infer that Knight possessed a deadly weapon without his displaying, brandishing or using a gun and without any explicit threat indicating that he had a gun" because the store clerk opened the cash register on the belief that he was armed with a gun — a conclusion she reached because he told her to open the register and the right hand "looked like he had a small gun in his pocket" because of its shape. Id. ¶ 29. The court, construing the evidence in the light most favorable to the prosecution, concluded that the state's evidence was legally sufficient because it presented "circumstances where the defendant's conduct alone makes clear that he holds a hidden weapon and that he could use it if the victim fails to comply with his instructions." Knight ¶ 19.
 {¶ 21} In the case at bar, the victim never saw the firearm, but he felt what he believed to be a firearm stuck into his side as defendant stood behind him and said "what it is."[1] The response of the victim was: "So I never said one word. So all I did was, I just dropped what I had in my hand and threw my hands in the air." Tr. 13.
 {¶ 22} Throughout his direct testimony, the victim referenced the gun without any doubt or hesitation that it was indeed a gun which was stuck into his side. On cross-examination, he conceded, however that he did not see the gun and therefore, when defense counsel asked "[s]o you're not 100 percent sure there was a gun involved," the victim answered, "[n]o." Tr. at 36-37. Defendant now argues that to infer that the object was a gun, without any threatening statements by defendant, would be stacking an inference upon an inference. We disagree.
 {¶ 23} First, the victim does not have to be "100 percent" certain that the unseen object is a gun. Hampton, supra;Knight, supra. Second, the victim's actions in acquiescing to being robbed indicate, as in State v. Knight, supra, his belief that he was being held up at gunpoint. Under these circumstances, his inability to actually see the gun is not dispositive. Defendant's actions and statements implied that the object in the victim's side was a gun and that it would be used if the victim did not cooperate. Defendant did not need to articulate what his actions implied. Moreover, a loaded .38 revolver was found near where one witness placed the defendant.
 {¶ 24} Moreover, shortly after the robbery, the police stopped a white SUV, which was identified as the same vehicle the robber had entered immediately after the robbery. When the vehicle was stopped, a rear passenger jumped out and ran away. Within a foot of the rear passenger door of this white SUV, the police found a loaded .38 revolver. All these circumstances suffice to meet the test for an operable firearm. The testimony of the victim is sufficient to support the conviction. Accordingly, this assignment of error is overruled.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J., concurs Cooney, J., concurs in judgment only.
[1] In itself, this phrase is ambiguous. On the one hand, in African-American dialect it is a general greeting, like "What's up?" See, Juba to Jive (1994) 505. On the other hand, the phrase could be understood as saying that defendant identified what was in the victim's side. The context, however, suggests the second interpretation.