OPINION
{¶ 1} Defendant-appellant, Ralph W. Bowman, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of attempted rape and kidnapping, each with a firearm specification. Because the trial court committed no reversible error, and because the sufficiency and manifest weight of the evidence support defendant's convictions, we affirm.
 {¶ 2} According to the state's evidence, the victim, RK, was riding his bicycle around his neighborhood on the evening of October 25, 2001. At approximately 9:00 p.m., RK was waiting to cross the street, when a man approached RK from behind. RK testified the man poked something that felt like the barrel of a gun into RK's back and ordered RK to pedal to a nearby park. Believing that the man possessed a gun, RK complied with the instructions.
 {¶ 3} Once RK and the man arrived at the park, the man led RK into a portable restroom, ordered RK to take off his clothes, and attempted to insert his penis into RK's anus. RK testified that the man continued to poke something into RK's back. The man not only instructed RK to count to 100 before turning around and leaving the portable restroom, but warned RK not to call police. RK counted to 100 as instructed and exited the portable restroom. He found his clothing and bike in the middle of a field, put on his clothes, except his shoes, and rode his bike home.
 {¶ 4} Upon arriving at home, RK rushed to his father and told him what happened; they called police and reported the incident. Two Columbus police detectives, including Detective Ward, responded to the call. The detectives went to the specific portable restroom RK indicated and found RK's shoes inside. The detectives took RK's clothes into evidence, and RK went to the hospital for examination.
 {¶ 5} Three years later, while defendant was incarcerated at the Pickaway Correctional Institute ("PCI") for an abduction conviction, defendant was selected for a random DNA sample. The DNA sample matched the DNA found on RK's jeans taken into evidence. On August 24, 2004, a Columbus police officer obtained a search warrant from a Franklin County municipal court judge. The officers executed the search at PCI and obtained an oral swab from defendant. The DNA obtained from the oral swab confirmed that defendant's DNA matched the DNA recovered from RK's jeans.
 {¶ 6} By indictment filed November 1, 2004, defendant was charged with one count of kidnapping in violation of R.C.2905.01, with specification, and one count of rape in violation of R.C. 2907.02, with two specifications. Defendant entered a plea of not guilty, and the court appointed a public defender to represent him. Defendant did not agree with counsel's strategy and requested new counsel be appointed. As a result of the ensuing discussion with defendant, the trial court allowed defendant to represent himself; his former appointed counsel acted as advisor.
 {¶ 7} Following the trial court's decision to deny defendant's motion to suppress the DNA evidence obtained from the oral swab, a jury trial commenced on November 21, 2005 and resulted in the jury's finding defendant guilty of attempted rape and kidnapping, each with a firearm specification. The trial court found defendant to be a sexual predator and sentenced defendant to seven years for attempted rape plus three consecutive years for the accompanying gun specification, to be served consecutively with nine years for kidnapping plus three consecutive years for the accompanying gun specification. On appeal, defendant assigns the following errors:
First Assignment of Error
The trial court erred [in] failing to suppress as evidence the fruits of a search based upon a warrant issued by a judge with no legal authority to authorize a search in Pickaway County and executed by a police officer with no legal authority to act in Pickaway County.
Second Assignment of Error
The trial court erred in failing to reduce the kidnapping charge from a felony one to a felony two because the victim was released in a safe place unharmed.
Third Assignment of Error
The trial court erred in refusing to submit to the jury the issue of whether or not the victim was released in a safe place unharmed.
Fourth Assignment of Error
The trial court erred in failing to sustain [defendant's] Crim.R. 29 motion for judgment of acquittal with respect to the firearm specification.
Fifth Assignment of Error
The jury verdict as to firearm specification was against the manifest weight of the evidence.
Sixth Assignment of Error
[Defendant] was deprived of effective assistance of counsel as guaranteed by the Sixth Amendment to the U.S. Constitution.
Seventh Assignment of Error
Under the facts of this case, the trial court erred in failing to find that attempted rape and kidnapping are allied offenses of similar import for purposes of R.C. 2941.25.
I. First Assignment of Error
 {¶ 8} Defendant's first assignment of error asserts the trial court erred in failing to grant defendant's motion to suppress DNA evidence a Columbus police officer obtained by executing a search warrant while defendant was incarcerated at PCI. Defendant contends the Franklin County Municipal Court lacked territorial jurisdiction to issue the warrant. Defendant further asserts that because the Columbus officer executed the warrant in Pickaway County, outside the officer's jurisdiction, the DNA sample was illegally seized.
 {¶ 9} An appellate court's standard of review of the trial court's decision denying a motion to suppress is two-fold. Statev. Reedy, Franklin App. No. 05AP-501, 2006-Ohio-1212, citingState v. Lloyd (1998), 126 Ohio App.3d 95. Because the trial court is in the best position to weigh the credibility of the witnesses, "we must uphold the trial court's findings of fact if they are supported by competent, credible evidence." Reedy,
supra. We nonetheless must independently determine, as a matter of law, whether the facts meet the applicable legal standard. Id.
 {¶ 10} Defendant initially asserts the Franklin County Municipal Court lacked the authority to issue the search warrant subject of his motion to suppress. Search warrants are subject to both constitutional and statutory provisions. State v. Wilmoth
(1986), 22 Ohio St.3d 251. In order to pass constitutional scrutiny, the search warrant must be based on probable cause and issued by a neutral and detached magistrate. Johnson v.United States (1948), 333 U.S. 10; State v. Kinney (1998),83 Ohio St.3d 85 (holding that the protections of Section 14, Article I, of the Ohio Constitution are co-extensive with those of theFourth Amendment to the United States Constitution). Whether a particular search is unconstitutional depends on the specific facts of each case. State v. Klemm (1987), 41 Ohio App.3d 382, citing State v. Robinson (1979), 58 Ohio St.2d 478. "Only searches that are unreasonable in a constitutional sense mandate the suppression of evidence" pursuant to the exclusionary rule announced in Mapp v. Ohio (1961), 367 U.S. 643. Klemm, supra, at 383; Kettering v. Hollen (1980), 64 Ohio St.2d 232 (holding that the statutory violation did not require suppression of the evidence because the officer had probable cause to arrest the defendant).
 {¶ 11} Under Ohio's statutory provisions, a search warrant shall issue only upon probable cause, supported by oath or affirmation describing with particularity the place to be searched and the things to be seized. R.C. 2933.22(A). Pursuant to R.C. 2933.21(A), a judge of a court of record may issue warrants to search a house or place within the judge's jurisdiction. Similarly, Crim.R. 41 provides that, upon the request of a prosecuting attorney or law enforcement officer, a judge of a court of record may issue a search warrant "to search and seize property located within the court's territorial jurisdiction" that may be evidence of the commission of a crime. Crim.R. 41.
 {¶ 12} R.C. 1901.02 establishes that the jurisdiction of municipal courts is "within the corporate limits of their respective municipal corporations," and it designates them to be "courts of record." R.C. 1901.02(A). The Franklin County Municipal Court has jurisdiction within Franklin County. R.C.1901.02(B). Neither a statutory violation, nor a violation of Crim.R. 41, requires suppression of the DNA evidence at issue if the search and seizure was constitutionally sound.
 {¶ 13} Within those general parameters, defendant does not assert the court acted unconstitutionally in issuing the search warrant. Specifically, he does not challenge the issuing court's determination of probable cause. Similarly, defendant does not allege that the judge who issued the warrant was anything other than neutral and detached. Nor does defendant suggest police misconduct, such as judge shopping, or contend that absent the warrant at issue, the search would not have occurred, for the warrant could have been obtained as easily from the Pickaway County Municipal Court and would have resulted in law enforcement's obtaining the same DNA evidence.
 {¶ 14} Rather defendant contends a statutory violation occurred when the court issued the warrant. Although the relevant statutory provisions were violated, suppression is not required because no constitutional violation occurred. State v. Hardy
(Aug. 28, 1998), Montgomery App. No. 16964 (holding that although the municipal court did not have the territorial jurisdiction to issue the warrant, suppression of the evidence was not necessary where the warrant was based on probable cause, the officers could have just as easily obtained a warrant from the proper jurisdictional court, and no evidence suggested police misconduct such as judge shopping); State v. Wilmoth (1986),22 Ohio St.3d 251.
 {¶ 15} Defendant also argues that suppression is required because the Columbus officers violated pertinent statutes in executing the warrant in Pickaway County, outside their jurisdictional limits. Generally, a police officer does not have the statutory authority to execute a search warrant outside his or her jurisdiction. Klemm; State v. Adams (Mar. 29, 2001), Franklin App. No. 00AP-850; State v. Leadingham (Feb. 6, 1990), Scioto App. No. CA-1753. Where, however, "probable cause exists to issue a search warrant, the search will be deemed constitutional even though the warrant was executed by police officers outside of their jurisdictional limits." Id.
 {¶ 16} Again, defendant's argument asserts no constitutional violation mandating suppression of the DNA evidence. Because the officer did not deprive defendant of his constitutional right to be free from unreasonable searches and seizures, suppression is not required. State v. McCoy, Licking App. No. 05-CA-29,2006-Ohio-56 (holding that because probable cause supported issuing the search warrant, the Heath officer's execution of the warrant in Newark was not a constitutional violation requiring suppression of the evidence); Klemm, supra (concluding that a Whitehall police officer's search of premises in conjunction with Fairfield county officers in the city of Columbus did not involve a constitutional violation where probable cause was not challenged). Defendant's first assignment of error is overruled.
II. Second and Third Assignments of Error
 {¶ 17} Defendant's second assignment of error asserts the trial court erred in denying his Crim.R. 29 motion to reduce the kidnapping offense from a first-degree felony to a second-degree felony pursuant to R.C. 2905.01(C). In the third assignment of error, defendant contends the trial court erred in failing to instruct the jury on the issue. Defendant argues that because RK was released in the portable restroom with no physical injuries, he was released unharmed. Defendant further argues that RK was released in a safe place because not only did defendant leave RK's clothes and bike close to the portable restroom, but RK's home was close to the park. Because the two assignments of error are interrelated, we address them together.
 {¶ 18} Crim.R. 29(A) provides that the court "on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A challenge to the denial of a Crim.R. 29 motion and to the sufficiency of the evidence apply the same standard. State v. Turner, Franklin App. No. 04AP-364, 2004-Ohio-6609, citing State v. Ready
(2001), 143 Ohio App.3d 748.
 {¶ 19} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997),78 Ohio St.3d 380, 386. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus; Statev. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 20} R.C. 2905.01 defines kidnapping and provides that "[i]f the offender releases the victim in a safe place unharmed, kidnapping is a felony of the second degree." R.C. 2905.01(C). "The provision in R.C. 2905.01(C), reducing kidnapping to a felony of the second degree `[i]f the offender releases the victim in a safe place unharmed,' is a mitigating circumstance, rather than an element of the crime of kidnapping. It is in the nature of an affirmative defense and is to be treated as such."State v. Cornute (1979), 64 Ohio App.2d 199, syllabus; Statev. Leslie (1984), 14 Ohio App.3d 343. The burden is on the defendant to prove the mitigating circumstance by a preponderance of the evidence. Id. at 201; State v. Jackson (Aug. 23, 1990), Franklin App. No. 89AP-1015.
 {¶ 21} We need not address whether defendant left RK unharmed, as the evidence, as a matter of law, failed to demonstrate that defendant released RK in a safe place. RK was only 14 years old at the time of the offense. The defendant left RK naked in a public portable restroom in a public park after dark. Although, as RK later discovered, his clothes and bike were nearby in a field, RK was left without his clothes and without transportation at the time defendant released him. The facts of this case do not demonstrate that RK was released in a safe place. State v. Cook, Cuyahoga App. No. 82777, 2004-Ohio-365
(holding that the victim was not released in a safe place where the defendant left the victim in the parking lot of a strip club at 1:00 a.m. without transportation to her car parked a 20-minute walk away). Accordingly, the trial court did not err in overruling defendant's Crim.R. 29 motion. Moreover, in the absence of facts supporting the affirmative defense, the trial court did not abuse its discretion in failing to instruct the jury regarding the affirmative defense. Defendant's second and third assignments of error are overruled.
III. Fourth and Fifth Assignments of Error
 {¶ 22} Defendant's fourth assignment of error claims the trial court erred in not granting his Crim.R. 29 motion concerning the indicted firearm specifications. In the fifth assignment of error, defendant contends his convictions for the firearm specifications are against the manifest weight of the evidence. Because the two assignments of error overlap, they will be addressed together.
 {¶ 23} Pursuant to R.C. 2941.145(A), a three-year mandatory prison term may be imposed upon an offender where (1) the offender has a firearm on or about the offender's person or under the offender's control while committing the offense, and (2) displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense. A firearm is any deadly weapon capable of expelling or propelling projectiles by the action of an explosive or combustible propellant. R.C. 2923.11(B)(1). A firearm includes an unloaded firearm and any firearm that is inoperable but readily can be operable. Id.
 {¶ 24} In order to enhance a sentence pursuant to the firearm specification statute, the state must present evidence beyond a reasonable doubt that a firearm existed and was operable, or readily operable, at the time of the offense. State v. Murphy
(1990), 49 Ohio St.3d 206. The state may use circumstantial evidence to prove the firearm specification, both its existence and its operability. Id. The trier of fact should consider all relevant facts and circumstances surrounding the crime, including the representations and actions of the individual exercising control over the firearm and any implicit or explicit threats that individual made. Thompkins, supra (holding that where an individual brandishes a gun and implicitly but not expressly threatens to discharge it, the threat can be sufficient to satisfy the state's burden of proving operability); State v.Watkins, Cuyahoga App. No. 84288, 2004-Ohio-6908; State v.Haskins, Erie App. No. E-01-016, 2003-Ohio-70.
 {¶ 25} Moreover, a defendant may be convicted of a firearm specification if, in the course of the crime, the defendant states he or she possesses a gun and will use it, even if no one sees the gun, the gun is never produced at trial, and the gun therefore cannot be tested to determine operability. State v.Jeffers (2001), 143 Ohio App.3d 91; Haskins, supra (holding that although the firearm was not visible, the conviction was not against the manifest weight of the evidence for a gun specification attendant to aggravated robbery where defendant threatened to use the "pistol in my pocket," thus establishing the firearm's operability by circumstantial evidence).
 {¶ 26} In other instances, the defendant's conduct alone makes clear that he or she possesses a firearm and could use it if the victim does not comply with the defendant's demands.Watkins, supra (holding that although the victim never saw a firearm, a firearm was implied where the victim felt what he believed to be a firearm stuck in his side as the defendant stood behind him and demanded submission to the robbery), citing Statev. Knight, Greene App. No. 2003CA14, 2004-Ohio-1941 (stating that the evidence sufficiently supported a finding that the defendant possessed a deadly weapon as required to convict defendant of aggravated robbery where the store clerk opened the cash register on the belief that the defendant was armed with a gun); State v. McDade (Sept. 25, 1998), Lake App. No. 97-L-059 (holding that the implicit threat of brandishing a firearm to threaten a victim is sufficient to establish operability).
 {¶ 27} Defendant initially argues the state offered insufficient evidence to present the gun specifications to the jury because, despite RK's trial testimony that he saw defendant in possession of a gun, RK did not tell police immediately after the incident that he actually saw a gun. Rather, RK told Detective Ward that defendant poked him in the back with something that felt like the barrel of a gun. Detective Ward testified on cross-examination that "[a] gun was implied. Never seen." (Tr. Vol. II, 122.)
 {¶ 28} At trial, RK testified he observed defendant had a gun as defendant forced him into the portable restroom at the park. RK described the gun as chrome with a black handle, like a revolver as opposed to an automatic. To the extent that testimony conflicts with his statement to police, we note that conflicting evidence does not render the evidence insufficient as a matter of law. State v. Butts, Franklin App. No. 03AP-495,2004-Ohio-1136, citing State v. Murphy (2001),91 Ohio St.3d 516. Construing RK's testimony alone in favor of the prosecution, a rational trier of fact could find that defendant used a firearm in the commission of a crime. State v. Kendall (June 29, 2001), Franklin App. No. 00AP-1098; Butts, supra; State v. McVay
(Sept. 30, 1999), Franklin App. No. 98AP-1246.
 {¶ 29} Further, on re-direct, Detective Ward testified RK told him that "[w]hen the object was put in the middle of his back, [RK] was told to pedal or he would be shot." (Tr. Vol. II, 129.) RK felt a gun poked in his back both when he pedaled on his bike toward the park and when defendant attempted to anally rape him in the portable restroom. Even if RK never saw a gun, defendant's actions implied that he had a gun and would use it if RK did not comply with his demands. Watkins; Knight, supra. Thus, the state presented sufficient evidence for reasonable minds to find that defendant used a firearm in the commission of a crime. Accordingly, defendant's Crim.R. 29 motion was properly denied.
 {¶ 30} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict to permit reasonable minds to find guilt beyond a reasonable doubt. Conley, supra; Thompkins, at 387 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The jury thus may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part or none of a witness's testimony." State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill
(1964), 176 Ohio St. 61, 67.
 {¶ 31} Relying again on the asserted inconsistency between RK's recitation of events to police immediately after the incident and his trial testimony, defendant contends the jury should not have believed RK's trial testimony. While our review of the manifest weight of the evidence involves a limited weighing of the evidence, inconsistencies in the testimony generally do not render the verdict against the manifest weight of the evidence. State v. Thompson (1998), 127 Ohio App.3d 511, discretionary appeal not allowed, 83 Ohio St.3d 1451; State v.Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing Statev. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 (noting that "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence").
 {¶ 32} Indeed, credibility issues remain in the province of the trier of fact. McVay, supra. Although RK's description of the events to police varied from his trial testimony, the jury properly could sort through the evidence and believe the trial testimony describing the gun RK saw, RK's telling Detective Ward defendant poked a gun in his back, or RK's advising Detective Ward defendant threatened to shoot him if he failed to comply, any of which support defendant's conviction for the gun specification. Because the manifest weight of the evidence supports defendant's convictions, defendant's fourth and fifth assignments of error are overruled.
IV. Sixth Assignment of Error
 {¶ 33} In the sixth assignment of error, defendant contends he was deprived of his right to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. Defendant claims he did not want to represent himself but had no alternative because the trial court refused to appoint new counsel. Although defendant argues ineffective assistance of counsel, defendant in effect asserts he did not knowingly and voluntarily relinquish his right to counsel.
 {¶ 34} The right of an accused to select his or her own counsel is inherent only in cases where the accused employs counsel; an indigent defendant is not entitled to counsel of choice. Thurston v. Maxwell (1965), 3 Ohio St.2d 92; State v.Gordon (2002), 149 Ohio App.3d 237. Rather, an indigent defendant is entitled to competent, effective representation from appointed counsel. Id. "Competent representation does not include the right to develop and share a `meaningful attorney-client relationship' with one's attorney." Id. at 241, citing Morris v.Slappy (1983), 461 U.S. 1.
 {¶ 35} When a defendant expresses concerns or complaints regarding appointed counsel, the trial court has a duty to inquire into the nature of the complaint, make such inquiry a part of the record, and make a decision on the record. State v.Davis (May 19, 1998), Franklin App. No. 97APA08-1020; State v.Deal (1969), 17 Ohio St.2d 17. Mere personality conflicts or disputes regarding trial strategy are insufficient to warrant appointment of new counsel where such conflicts do not interfere with preparation or presentation of a competent defense.Thurston; Gordon; Davis, supra. Generally, to justify the appointment of new counsel, the defendant must show the relationship with appointed counsel jeopardized the defendant's right to effective assistance of counsel. State v. Coleman
(1988), 37 Ohio St.3d 286.
 {¶ 36} On June 2, 2005, defendant appeared before the trial court on his motion to appoint new counsel. Defendant complained that his appointed counsel did not regularly visit him or adequately investigate his case; defendant also disagreed with counsel's case strategy. The trial court discussed the matter with defendant and ultimately overruled his motion, informing defendant of counsel's expertise and noting the tough issues defendant faced in his case. The court also advised defendant he was entitled to make certain decisions on the case, but counsel made certain other decisions. The trial court continued the trial date and allowed defendant to be transported a few weeks early from PCI, where defendant was still incarcerated, to Franklin County so defendant and counsel could meet more often, if necessary.
 {¶ 37} On August 22, 2005, defendant again requested new counsel, or alternatively, to represent himself. The trial court determined counsel spent adequate time with defendant and was adequately prepared to proceed with trial. Nonetheless, the trial court ordered a second public defender to assist in the case, resulting in two public defenders representing defendant. The court then continued defendant's case for 60 days.
 {¶ 38} The record is unclear whether a second public defender was appointed prior to October 25, 2005, but on October 25, 2005 defendant again reiterated his desire to represent himself because he continued to be dissatisfied with appointed counsel. The court allowed defendant to represent himself with the caveat that former appointed counsel sit as an advisor. Defendant agreed.
 {¶ 39} The trial court complied with its duty to inquire into the nature of defendant's complaints regarding counsel and properly resolved such issues on the record. Indeed, the trial court exceeded its duty, as defendant's complaints mainly dealt with trial strategy and the time counsel devoted to his case. Defendant admitted he was not second-guessing counsel or suggesting counsel was "incompetent in any way." (Tr. Vol. I, 14.) Nor does the record reflect a total breakdown in communication between defendant and counsel that jeopardized defendant's right to effective assistance of counsel. Accordingly, the trial court did not err in overruling defendant's motions to appoint new counsel. The remaining issue is whether defendant assumed self-representation through a knowing, voluntary and intelligent waiver of his to right counsel.
 {¶ 40} "The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." State v. Gibson (1976),45 Ohio St.2d 366, paragraph one of the syllabus, citing Faretta v.California (1975), 422 U.S. 806. Pursuant to Crim.R. 44(A), a defendant charged with a serious offense, as in this case, shall be assigned counsel unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives that right. Waiver of counsel shall be recorded in open court and, in serious offense cases, the waiver shall be in writing. Crim.R. 44(C).
 {¶ 41} In order to establish an effective waiver of the right to counsel, the trial court must "make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." State v. McQueen (1997),124 Ohio App.3d 444, 446, citing Gibson, supra; State v. Haines,
Franklin App. No. 05AP-55, 2005-Ohio-5707 (stating that the waiver of the right to counsel requires a clear and unequivocal assertion of the right to self-representation, a necessary requirement to protect against a defendant's inadvertent waiver). For the waiver to be valid, the trial court must apprise the defendant of his or her right to be represented by counsel, the nature of the charges, the range of possible penalties, any possible defenses, the importance of having counsel, the benefit of counsel's experience, the risks of proceeding on his or her own, and all other facts essential to a broad understanding of the matter. State v. Martin, 103 Ohio St.3d 385,2004-Ohio-5471, at ¶ 38, quoting Von Moltke v. Gillies (1948),332 U.S. 708.
 {¶ 42} Although a defendant does not need to have the skill and experience of a lawyer in order to competently and intelligently forego representation, the court must make the defendant aware of the dangers and disadvantages of self-representation. Id., quoting Adams v. United States ex rel.McCann (1942), 317 U.S. 269; State v. Montgomery, Franklin App. No. 02AP-927, 2003-Ohio-2888 (holding that despite the trial court's appointment of standby counsel and defendant's previous involvement with the criminal justice system, defendant did not knowingly and intelligently waive his right to counsel where the trial court failed to determine whether the defendant fully understood the significance of the proceedings, the risks involved, and the potential sentence he undertook if he was found guilty); State v. Petaway, Logan App. No. 8-05-11,2006-Ohio-2941 (holding that the defendant did not knowingly and intelligently relinquish his right to counsel where the trial court failed to inform defendant of the possible penalties and possible defenses and to determine whether defendant was aware of the disadvantages and dangers inherent in self-representation).
 {¶ 43} Initially, we note the record does not contain defendant's signed waiver of counsel. The Ohio Supreme Court, however, stated that "[w]hile literal compliance with Crim.R. 44(C) is the preferred practice, the written waiver provision * * * is not a constitutional requirement, and, therefore, * * * the trial court need demonstrate only substantial compliance" with Crim.R. 44(A). Martin, at ¶ 39 (stating that "in the case of a `serious offense' as defined by Crim.R. 2[C], when a criminal defendant elects to proceed pro se, the trial court must demonstrate substantial compliance with Crim.R. 44[A] by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel). If substantial compliance is demonstrated, failure to execute a written waiver is harmless error. Id.
 {¶ 44} Here, the trial court substantially complied with Civ.R. 44(A). The trial court discussed each step of the trial with defendant, including voir dire, opening statements, direct and cross-examination of witnesses, presentation of evidence, closing arguments, and jury instructions. The court ordered that defendant be provided access to the law library, ensured that defendant had the necessary legal books to assist in his defense, and ordered appointed counsel to sit as advisor. The court told defendant that if at any time he wished to cease representing himself, that option remained available. The trial court also initiated discussion during trial regarding possible defenses to the charges and allowed the state and defendant to research areas of the law and respond to the court's questions. The court further allowed advisory counsel to argue defendant's Crim.R. 29 motion at the close of the state's evidence.
 {¶ 45} The record further reveals that defendant, who had some college education, was aware of his right to be represented by counsel, of the charges against him, and the seriousness of those charges. Indeed, defendant acknowledged that he was facing the possibility of life in prison without parole. Commenting on defendant's intelligence more than once, the trial court asked defendant why he wanted to represent himself and, on more than one occasion, reiterated the tough issues defendant faced. Indeed, despite defendant's representing himself, the record reflects defendant's notable ability to question witnesses, present a defense that he was not the perpetrator, and understand the issues that existed in his case. See Gibson, supra. Under the circumstances of this case, the trial court substantially complied with its duty to ensure that defendant knowingly, voluntarily, and intelligently waived his right to counsel. Accordingly, defendant's sixth assignment of error is overruled.
V. Seventh Assignment of Error
 {¶ 46} Defendant's seventh assignment of error contends the trial court erred in failing to conclude attempted rape and kidnapping are allied offenses of similar import for purposes of R.C. 2941.25. Defendant argues that the facts of this case are such that the attempted rape and kidnapping can be viewed as one extended course of conduct: RK was forced to ride his bike only approximately 440 yards to the portable restroom before the attempted rape occurred.
 {¶ 47} For two crimes to constitute allied offenses of similar import, a recognized similarity between the elements of each offense must exist; the offenses and their elements must correspond to such a degree that commission of one offense results in commission of the other offense. State v. Logan
(1979), 60 Ohio St.2d 126; State v. Evans, Franklin App. No. 01AP-1112, 2002-Ohio-3322; State v. Rance (1999),85 Ohio St.3d 632 (clarifying the test to determine if offenses are allied offenses under R.C. 2941.25). If the offenses meet the test, they are allied offenses of similar import and the defendant may be convicted of only one of the offenses. Id. If not, the court must review the defendant's conduct to determine whether the defendant committed offenses separately or the defendant had a separate animus for each offense. Id.
 {¶ 48} The elements of rape are set forth in R.C.2907.02(A)(2), providing that "no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The elements of kidnapping, as alleged in the indictment, are set forth in R.C. 2905.01(A)(4), providing that "no person, by force, threat, or deception, or in the case of a victim under thirteen years of age, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person * * * to engage in sexual activity."
 {¶ 49} The test for determining whether kidnapping and another offense were committed with a separate animus is whether the restraint or movement of the victim is merely incidental to a separate offense or whether it has a significance independent from the other offense. State v. Craig, 110 Ohio St.3d 306,2006-Ohio-4571, at ¶ 117, citing Logan, supra. "`Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.'" Id. Prolonged restraint, secretive confinement, or substantial movement of the victim, apart from the other offense, are factors establishing a separate animus for kidnapping. Id.
 {¶ 50} Under the facts of this case, we cannot say defendant's act of kidnapping RK was merely incidental to his attempt to rape RK. Defendant approached RK, at gunpoint, when RK was attempting to cross the street on his bike; defendant forced RK to pedal his bike several streets to a park. Once at the park, defendant ordered RK into a portable restroom and instructed RK to remove his clothing. In view of the significant movement defendant compelled at gunpoint prior to the attempted rape, we cannot say the trial court erred in finding the restraint was prolonged and the movement was substantial so as to demonstrate significance independent of the attempted rape. State v.Payton, Stark App. No. 2004-CA-00019, 2005-Ohio-737 (holding that rape and kidnapping were not allied offenses of similar import where the defendant lured the victims to a secluded location, made the victims kiss each other and ordered them to disrobe). Accordingly, defendant's seventh assignment of error is overruled.
 {¶ 51} Having overruled defendant's seven assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Brown and French, JJ., concur.