[Cite as *State v. Roscoe*, 2013-Ohio-3617.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99113**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANTHONY ROSCOE

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED FOR RESENTENCING

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-563953

**BEFORE:** E.A. Gallagher, J., Celebrezze, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** August 22, 2013

**ATTORNEYS FOR APPELLANT**

William J. Day
9100 South Hills Boulevard
Suite 300
Broadview Heights, Ohio   44147

Michael J. Manuszak
2905 Paxton Road
Shaker Heights, Ohio   44120


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Nicole Ellis
         Brent C. Kirvel
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, J.:

**{¶1}** Defendant-appellant Anthony Roscoe appeals his convictions for rape, kidnapping, aggravated robbery, and having a weapon under disability.  He argues that his convictions are unsupported by sufficient evidence, are against the manifest weight of the evidence and that the trial court failed to make necessary findings before imposing consecutive sentences.  After a thorough review of the record and the law, we vacate appellant's convictions for aggravated robbery under R.C. 2911.01(A)(1), Count 5; aggravated robbery under R.C. 2911.01(A)(3), Count 6; having a weapon while under disability and all firearm specifications.  We enter judgment of conviction on the lesser included offense of robbery as defined in R.C. 2911.02(A)(2), under Count 5 of aggravated robbery and remand with instructions to resentence Roscoe pursuant to R.C. 2911.02(A)(2).

## I.  Factual and Procedural History

**{¶2}** In the early morning hours of May 14, 2010, C.B., the victim in this case, was driving around Cleveland in a quest to buy drugs.  She testified that she was sober for almost three years since moving from Columbus to Cleveland but on that night she was upset about a fight that she had with her fiancé and she went out drinking with a friend.  After she left the bar, she wanted to find some crack cocaine.  Not knowing where to buy it, she drove around looking for people to sell her drugs.  She eventually arrived at a gas station on Cleveland's east side and saw three men talking.  She approached the men and

asked if they knew where she could get some crack and where she could smoke it. The two men offered to lead her to a location where she could make her purchase. Two of the men got into a sedan driven by a third man. Not being familiar with the area, she followed in her car until they came to a stop near a house on Hilgert Drive, a short distance from the gas station and where they had parked on the street.

{¶3} C.B. testified that the men with whom she talked at the gas station exited the car in which they had traveled and attempted to enter hers. She would not allow them into her vehicle but instead exited her car and followed them up a driveway to the side door of the house and one of the men rang the doorbell. No one answered after several minutes and one of the men then turned around and told her to give him her money and jewelry. The second man, whom she later identified as appellant, pressed something small, cold and hard against her neck from behind. She assumed it to be a gun and did not resist as the man in front of her took her money, credit cards, identification, car keys and jewelry. She pleaded with him to give her back her identification because she was afraid she would be killed and left unidentified. The man returned her driver's license to her and she also pleaded for them not to take her truck. The man who had been in front of her told her that he would leave her keys at the end of the driveway. While that man walked away, the man behind her began pulling her toward the backyard of the house, still pressing the object to her neck. As the two entered a darkened section of the backyard, she heard her truck drive away. She was then raped vaginally, anally and orally in the muddy yard. She was afraid she would be murdered, so when appellant

ejaculated into her mouth, she spit the fluid onto her shirt in hopes that DNA evidence could be used to identify her attacker.

{¶4} Appellant left her in the yard where she lay and she ultimately rose and stumbled toward light, which was being shined at the driveway.

{¶5} Officer Neil Presta testified that he received instructions to investigate a call of two people in a backyard of a home on Hilgert Drive. He began driving on Hilgert, directing the spotlight on his patrol car into the shadows along the street and saw a woman emerge from the darkness between 10003 and 10007 Hilgert. He said she looked distraught and was sobbing hysterically. He approached her and she reported to him that she had been raped.

{¶6} Emergency services transported C.B. to Marymount Hospital where she was examined by a nurse with specialized sexual assault training. Several biological samples were collected and the police forwarded these samples to an independent lab, which was under contract with the state for DNA testing.

{¶7} In August 2011, Detective Robert Ford of the Cleveland Police Department received a report of a match to the suspect DNA profile from the national DNA database, CODIS. The suspect DNA profile was matched to that of appellant.

{¶8} Detective Ford arranged a photo array with a blind administrator for C.B. She picked appellant out of the six-photo lineup as the person who had robbed and sexually assaulted her on the night of May 14, 2010.

{¶9} Appellant was indicted on June 27, 2012, on one count of kidnapping with a sexual motivation specification, three counts of rape, two counts of aggravated robbery and one count of having a weapon while under disability. These charges, except for the weapons under disability count, carried one- and three-year firearm specifications. A bench trial commenced on October 1, 2012.

{¶10} After C.B. and several police and Bureau of Criminal Investigation witnesses testified, appellant testified in his own defense. He claimed he saw C.B. as he waited at a bus stop near a gas station at approximately 2:00 a.m. He said she looked distraught. According to him, she related that she had a fight with her boyfriend and that she wanted to get back at him by having sex with another man. He offered to oblige this desire. He attempted to get into her car but she refused to allow him to enter the vehicle. Appellant testified that he gave her directions to a place on Hilgert, that she drove there, parked on the street and waited for him to arrive on foot. Once on Hilgert, he led her into the backyard of a random home and the two engaged in consensual oral sex. Appellant left when he saw lights shining into the backyard because he was afraid it was the police and he had an outstanding warrant for his arrest. Appellant claimed he did not have a gun and that the sex was consensual.

{¶11} The trial court found appellant guilty of all charges: kidnapping with one- and three-year firearm specifications and a sexual motivation specification; three counts of rape with one- and three-year firearm specifications; two counts of aggravated robbery

with one- and three-year firearm specifications and having a weapon while under disability.

{¶12} At the sentencing hearing, the trial court heard statements from the state, the victim's representative, appellant, his attorney and appellant's family. After consulting with the state, the court merged the charges of kidnaping (Count 1), rape (Count 2) and aggravated robbery (Count 5) and also merged the firearm specifications for the three counts of rape (Counts 2, 3 and 4) and the two counts of aggravated robbery (Counts 5 and 6). The court then sentenced Roscoe to eight years in prison for each of the three counts of rape to run concurrently to each other; five years in prison for each charge of aggravated robbery to run concurrently to each other and twelve months in prison for the weapons while under disability charge to run concurrent with the other counts. The court ordered the sentences for the firearm specifications under Counts 2, 3 and 4 to be served consecutively to the firearm specifications for Counts 5 and 6 and that the eight-year sentence for the three counts of rape was to be served consecutively to the five-year term of imprisonment on the charges of aggravated robbery for a total prison term of 19 years. The court initially neglected to properly inform appellant of postrelease control, but remedied the advisement in open court days later.

{¶13} Appellant now appeals, assigning five errors for review:

I. The trial court erred in not granting Appellant's Rule 29 Motion for Acquittal and in finding Appellant guilty on all counts on the grounds that evidence submitted by the State is insufficient for a conviction.

II. The trial court erred finding Appellant guilty on all counts on the ground that the evidence is insufficient for a conviction.

III. The trial court erred in not granting Appellant's Rule 29 Motion for Acquittal and in finding Appellant guilty on all counts on the ground said court's decision is against the manifest weight of the evidence.

IV. The trial court erred finding Appellant guilty on all counts on the ground that a conviction is against the manifest weight of the evidence.

V. The trial court erred in not complying with the three-step analysis under O.R.C. 2929.14(C)(4) when consecutive sentences imposed were an integral part of Appellant's sentence, and further, a consecutive sentence was not appropriate and an abuse of discretion given the facts and circumstances in this matter.

## II. Law and Analysis

### Sufficiency of the Evidence

{¶14} In appellant's first two assignments of error, he argues that his convictions for rape, aggravated robbery and having a weapon while under disability are unsupported by sufficient evidence in the record. He also argues that there was insufficient evidence that a gun was used during the commission of these crimes and that the gun specifications cannot stand.

{¶15} This court has set forth a concise statement of its role when reviewing whether a conviction is supported by sufficient evidence:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Boyce*, 8th Dist. Cuyahoga No. 93543, 2010-Ohio-3870, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

## Rape

{¶16} R.C. 2907.02(A)(2), rape, prohibits one from engaging "in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Appellant's three rape convictions are supported by sufficient evidence.

{¶17} At trial, C.B. testified she was first raped vaginally but appellant was interrupted when he thought he heard someone nearby. He was about to hop over the fence but returned and raped her anally. Finally, appellant forced C.B. to engage in oral sex and he ejaculated into her mouth. C.B. not only identified appellant in a photo array but also made an in-court identification of him as the perpetrator. Appellant points to the fact that no semen was found in C.B.'s vaginal or anal cavities during her examination by the Marymount Hospital sexual assault nurse examiner ("SANE"), Melissa Tichy. However, C.B. testified that appellant used a condom for all but the oral sex. The SANE nurse did find semen in C.B.'s underwear, for which appellant could not be excluded as the donor.[1] This is sufficient evidence to support three convictions for rape.

## Aggravated Robbery and Serious Physical Harm

---

[1] This sample was a mixture of DNA, and the expert witness could only testify that appellant's DNA sample was consistent with the sample obtained from the underwear. The other samples tested indicated that appellant was the DNA contributor to a high degree of statistical certainty.

{¶18} Appellant was convicted of two counts of aggravated robbery, one under R.C. 2911.01(A)(1) and one under R.C. 2911.01(A)(3). This statute provides in part:

No person, in attempting or committing a theft offense * * * shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
* * *

(3) Inflict, or attempt to inflict, serious physical harm on another.

{¶19} In support of these charges, the state presented the testimony of C.B. She testified that two men led her to what she described as a condemned house. Once there, one man demanded her property while appellant held what she perceived to be a gun to the back of her neck. She parted with her property while pleading for her life and crying. There is sufficient evidence that C.B. was robbed by these two men. However, there is no evidence that appellant inflicted or attempted to inflict serious physical harm during the robbery, as required for a conviction under R.C. 2911.01(A)(3) as charged in Count 6.

{¶20} Serious physical harm is defined in the Revised Code as:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

**{¶21}** Appellant did inflict serious physical harm when he raped C.B., but not while she was being robbed. The Ninth District reached a similar conclusion when dealing with a rape and burglary in Akron, Ohio. *State v. Butts*, 9th Dist. Summit No. 24517, 2009-Ohio-6430. In that case, a male broke into the room of a female University of Akron student. She awoke to find a male in her room standing by her computer. He sexually assaulted her and left. She discovered that he had taken $60 from her wallet after the police found it on her bedroom floor rather than on the dresser where it had been left. Butts was convicted of, among other things, aggravated robbery under R.C. 2911.01(A)(3). His aggravated robbery conviction was reversed on appeal. *Id*. at ¶ 10. The appellate court found that while Butts did inflict serious physical harm when he held a pillow over the victim's face to cease her screams for help, that did not occur during the robbery. He had already taken the money before she awoke. There was no evidence that Butts inflicted or attempted to inflict serious physical harm at the time he committed the theft offense. *Id.* at ¶ 10.

**{¶22}** This contrasts with the facts in another Ninth District case where the robbery and rape occurred contemporaneously. *State v. Malone*, 15 Ohio App.3d 123, 472 N.E.2d 1122 (9th Dist.1984). There, two young victims were taken behind a garage by four men. *Id*. at 123-124. Malone was convicted of rape and aggravated robbery

under R.C. 2911.01(A)(3).   He argued there was insufficient evidence of serious physical harm during the robbery.   The *Malone* court found,

> The chronology of events indicates that Malone forcibly carried the victim to an area hidden from view. He first demanded money from the victim and then raped her twice. Malone argues that the facts should not be considered together, but rather separately so that the rapes stand apart from the robbery. Malone chose the offenses along with when and how he would commit them. His complaint, therefore, that he completed the robbery and then proceeded to commit the rapes is without moment. Malone created the criminal environment which so intertwined the commission of the rapes with the robbery that one offense did not neatly end before the second began.

*Id*. at 125.

{¶23} In the present case, the theft offenses were completed when the second man departed.   The theft offenses were committed when the accomplice took C.B.'s property.  It was after the completion of the theft offense and the departure of the other individual that C.B. was led into the backyard and raped.   These events are not so contemporaneously intertwined that they cannot be separated as in *Malone*.

{¶24}   Therefore, there is insufficient evidence that appellant inflicted or attempted to inflict serious physical harm to C.B. during the commission of the robbery. Appellant's conviction under R.C. 2911.01(A)(3) must be reversed.

### Aggravated Robbery, Weapon Under Disability and Firearm Specifications

{¶25} Appellant's convictions included having a weapon while under disability. R.C. 2923.13(A)(2) states in pertinent part:

> No person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

\* \* \*

(2) The person is under indictment for or has been convicted of any felony offense of violence \* \* \*.

{¶26} Appellant was also convicted of two three-year firearm specifications under R.C. 2941.145, which imposes an additional three-year prison term when "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

{¶27} As evidence of a prior conviction necessary for R.C. 2923.13, the state introduced a certified journal entry of appellant's 2005 conviction for attempted burglary and appellant does not claim that this is insufficient for a disability under this statute. The main thrust of appellant's argument is that he did not, in fact, possess a firearm during the commission of these crimes.

{¶28} Further, appellant's aggravated robbery conviction under R.C. 2911.01(A)(1) requires evidence that he used or possessed a deadly weapon while committing a theft offense. Therefore, all three of these convictions hinge on evidence that appellant possessed a firearm.

{¶29} A firearm is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1). Further, when determining whether a firearm is operable "the trier of fact may rely upon circumstantial evidence,

including, but not limited to, the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2). *See also State v. Knight*, 2d Dist. Greene No. 2003 CA 14, 2004-Ohio-1941, ¶ 19 ("both a weapon's existence and its operability may be inferred from the facts and circumstances").

> According to the Ohio Supreme Court, a firearm specification can be proven beyond a reasonable doubt by circumstantial evidence. That evidence may consist of the testimony of lay witnesses who were in a position to observe the instrument and the circumstances of the crime.
>
> Furthermore, in [*State v. Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541] the Ohio Supreme Court rejected the view that the circumstantial proof of operability must consist of certain recognized indicia, such as bullets, the smell of gunpowder, bullet holes, or verbal threats by the user of the weapon that he or she would shoot the victim.

(Citations omitted.) *State v. Nicholson*, 8th Dist. Cuyahoga No. 85977, 2006-Ohio-1569, ¶ 27-28.

{¶30} There exists a litany of Ohio cases that address the proof required to establish a firearm specification. To establish a firearm specification, the state is required to prove that the offender possessed a weapon that was capable of firing a projectile by means of an explosive or combustible propellant and was operable or could readily have been rendered operable at the time of the offense. *State v. Roberts*, 1st Dist. Hamilton No. C-940509, 1995 Ohio App. LEXIS 1778 (May 3, 1995). R.C. 2923.11 provides, however, that in determining whether a weapon is capable of expelling a projectile, the trier of fact may rely upon circumstantial evidence including, but not limited to, the representations and actions of the individual exercising control over the weapon.

**{¶31}** The body of cases on this issue hold that either the assailant was in possession of a firearm and made statements of his ability, or intent, to use it to cause physical harm or that the offender intimated that (s)he possessed it, without brandishing it and contemporaneously made statements of his/her ability to cause harm with a firearm. *See State v. Jeffers*, 143 Ohio App.3d 91, 757 N.E.2d 417 (1st Dist.2001), Jeffers threatened to "blow [Atkinsons'] head off" if she refused to give him money while indicating he possessed a firearm by the manner in which he concealed his hand in his pocket; *Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, Thompkins pointed a gun at the victim and told her he was committing a "holdup" and to be "quick, quick"; *State v. Dixon*, 71 Ohio St.3d 608, 1995-Ohio-178, 646 N.E.2d 453, during the course of a robbery, Dixon patted an object tucked into his waistband that the victim described as a gun and stated "I don't want to have to use this." In *State v. Haskins*, 6th Dist. Erie No. E-01-016, 2003-Ohio-70, a conviction was upheld where, although no gun was displayed or found, Haskins stated "are you going to give me the money or do I have to pull this pistol out of my pocket?"

**{¶32}** In this case, we have a victim who never saw a firearm during the commission of the crimes perpetrated against her nor do we have any evidence that Roscoe made any statements to suggest that he was in a position to harm her with a handgun as required in *State v. Murphy*, 49 Ohio St.3d 206, 551 N.E.2d 932 (1990). In *Murphy*, although the handgun used during the commission of the crime was never recovered, Murphy made statements to the victim, while brandishing the weapon, that he

would kill her.  The Ohio Supreme Court held then, with respect to operability of the gun, "proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime."  *Id*. at 209.

{¶33}  *State v. Knight*, 2d Dist. Greene No. 2003-CA-14 2004-Ohio-1941, is a more tenuous case.  The Second District upheld a conviction where the defendant, during a store robbery, demanded that a clerk open the cash register.  Although the defendant did not display, brandish, use or overtly threaten the clerk, she complied with his demand because she thought the defendant's right hand "looked like he had a small gun in his pocket."

{¶34}  In *State v. Watkins*, 8th Dist. Cuyahoga No. 84288, 2004-Ohio-6908, this court, relying on *Knight*, held that a defendant's actions and statements may create enough circumstantial evidence to support a firearm conviction even though the victim only believes the defendant has a gun.  In *Watkins*, the defendant approached the victim and stuck an object in his side and said, "you know, what it is."  From these actions, the victim believed the defendant had a gun and put his hands in the air.  The majority acknowledged in a footnote that the phrase "you know, what it is," although ambiguous, could be understood as the defendant identifying the object at the victim's side.

{¶35} We find the instant case easily distinguishable from the aforementioned cases and analogous to the facts in *State v. Evans*, 8th Dist. Cuyahoga No. 85396, 2005-Ohio-3847.  In *Evans*, the victim testified that the defendant approached her with

his hand in his pocket and she believed he had a gun. With his hand still in his pocket, he grabbed her purse and said, "come with me." Based on her belief that he had a gun, she followed him into the apartment building. The *Evans* court found the absence of any evidence that the defendant "threatened the victim with a gun, that the victim felt an object or saw a shape which could be construed as a gun, that [the defendant] had a gun in his possession, or that a gun was used in the commission of the crime." The court concluded that the victim's belief that the defendant had a gun in his pocket simply because he kept his hand in his pocket, without more, was not enough circumstantial evidence to support the defendant's conviction. This court concluded that the state did not satisfy its burden that a gun was in existence or operable at the time of the offense.

{¶36} In this case, we have the testimony of the victim that Roscoe placed a small, cold, hard object to her neck. Although the victim testified that she believed the object was a gun, the state provided no other evidence, as required, that this object was, in fact, a gun. Roscoe never threatened to shoot the victim and the victim never identified the object pressed against her neck as a gun. The victim's description of the object as small, cold and hard could be used to describe countless objects. It is this court's conclusion that this belief, without more, does not create sufficient circumstantial evidence to support Roscoe's conviction.

{¶37} We find that the state did not satisfy its burden that a gun was in existence or operable at the time of the offense. Therefore, we vacate Roscoe's convictions and sentence for all firearm specifications as well as his conviction and sentence for having a

weapon while under disability and aggravated robbery as defined in R.C. 2911.01(A)(1) and charged in Count 5 of the indictment.

{¶38} However, this court finds sufficient evidence to convict Roscoe on the charge of robbery as defined in R.C. 2911.01(A)(2), a lesser included offense of aggravated robbery as defined in R.C. 2911.01(A)(1).

{¶39} In *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, the Ohio Supreme Court held as follows:

> R.C. 2945.74 provides that a criminal defendant may be found guilty of a lesser included offense even though the lesser offense was not separately charged in the indictment. Lesser included offenses need not be separately charged in an indictment, because when an indictment charges a greater offense, it 'necessarily and simultaneously charges the defendant with lesser included offenses as well.' Thus, a conviction for a lesser included offense does not deprive an offender of his constitutional right to presentment or indictment by the grand jury, because by indicting the offender for the greater offense, the jury has necessarily considered each of the essential elements of the lesser offense. (Citations omitted).

{¶40} In *Evans*, the Ohio Supreme Court determined that robbery, as defined in R.C. 2911.02(A)(2), is a lesser included offense of aggravated robbery, as defined in R.C. 2911.01(A)(1). Pursuant to R.C. 2911.02(A)(2), robbery is defined as follows, "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall *** [i]nflict, attempt to inflict, or threaten to inflict physical harm on another * * *."

{¶41} In the present case, there is sufficient evidence to support a conviction on the charge of robbery as defined above. C.B. testified that the two men led her to a

condemned house and once there, demanded her property while Roscoe held what C.B. perceived to be a gun to the back of her neck.   C.B. parted with her property.

{¶42} Further, there was evidence of physical harm that could have been inflicted during the robbery.   There were scratches on C.B.'s neck, which she testified were caused by the object held to her neck.   This court acknowledges that it is unclear when these scratches were inflicted — during the rape or the robbery and concludes that even if the scratches were not inflicted during the robbery, Roscoe's act in holding an object to the back of C.B.'s neck in order to coerce her of her property is sufficient evidence of a threat to inflict physical harm.

{¶43} Thus, there is sufficient evidence to convict Roscoe of the lesser included offense of robbery, R.C. 2911.02(A)(2).   This court enters judgement against Roscoe for robbery, R.C. 2911.02(A)(2), and remands the case to the trial court with instructions to resentence Roscoe pursuant to R.C. 2911.02(A)(2).   *See* App.R. 12(B); *State v. Waszily*, 105 Ohio App.3d 510, 664 N.E.2d 600 (8th Dist.1995) (Nugent, J., dissenting).

### B. Manifest Weight

{¶44} In appellant's third and fourth assignments of error, he claims his convictions are against the manifest weight of the evidence.   Because we determined that Roscoe's convictions for both counts of aggravated robbery, having a weapon while under disability and all firearm specifications were not supported by sufficient evidence, we limit this assigned error to Roscoe's convictions for kidnapping and rape.

**{¶45}** A manifest weight challenge raises a question of fact challenging "whether the prosecution met its burden of persuasion." *State v. Ponce*, 8th Dist. Cuyahoga No. 91329, 2010-Ohio-1741, ¶ 17, quoting *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). In reviewing the entire record, the court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

**{¶46}** Appellant's manifest weight claims rest on his trial testimony, which contradicted that of C.B.'s, and her intoxication at the time of the incident. He testified that he and C.B. engaged in consensual oral sex. It is helpful to compare and contrast the two versions of events testified to at trial.

**{¶47}** According to C.B., she was inebriated and decided to drive to an unfamiliar area to buy drugs after she left a bar at about 1:30 a.m. She testified that she drove around until she found a neighborhood that looked like one where she would be able to find someone from whom she could buy drugs. She ended up at a gas station on Cleveland's southeast side but testified that she could not remember the name of the gas station or its precise location. She pulled in and saw a man she considered too off-putting to approach. She then went to a different gas station and relieved herself behind the building. She drove back to the first gas station and, at that time, there were two more men standing near the first man whom she saw earlier. She approached the

men and asked them if they knew where she could buy some crack. One of the men, a shorter, light-skinned individual, did most of the talking while the other man, later identified as appellant, remained quiet. C.B. agreed to go with the men to a nearby house where she could buy and smoke crack. The two men got into a dark sedan already occupied by a third male who drove the car. She followed the car to a house on Hilgert where she was robbed and raped.

{¶48} Appellant testified that he was seated at a bus stop around 2:00 a.m. when he saw a man talking to a female in a Ford Explorer. After the man walked away, appellant asked him about the female. He was told to see for himself, and he approached her car to talk. Appellant testified C.B. was upset with her boyfriend and wanted to get back at him by sleeping with another male. Appellant agreed to engage in sex with C.B. He attempted to get into C.B.'s car, but she refused him entry. He testified he gave C.B. directions to a place on Hilgert and she drove there while he walked to that location. He claimed he got there about three to four minutes later to find C.B. parked on the street. He took her into a nearby backyard where the two engaged in consensual oral sex. Appellant then left when he saw someone shining a bright light into the backyard. He testified he thought it was the police and then ran off.

{¶49} Those bright lights were the police. Cleveland police officer Neil Presta testified that he responded to a call about people in a backyard. He arrived to find C.B. stumbling from a yard crying hysterically, muddy, and shaking badly. C.B. told him she

was raped.   Appellant also admitted that C.B. had a number of items of jewelry on during this encounter, but she had no jewelry when she was taken to Marymount Hospital.

{¶50} The trial court found that appellant's story — that he walked to the location of the rape after giving C.B. directions to an area with which she was completely unfamiliar — did not make any sense.   The court found C.B.'s testimony both consistent and credible and appellant's version of events incredible.   This court reaches the same conclusion.

{¶51} The trial court did not lose its way in convicting appellant of rape and kidnapping.

### C.   Findings Necessary for Consecutive Sentences

{¶52} Finally, appellant argues the trial court failed to make the necessary findings justifying consecutive sentences. Our analysis of Roscoe's first and second assignments of error render this final assignment of error moot. The trial court merged the charge of kidnapping with the first count of rape and sentenced Roscoe to eight years on each of the three counts of rape, to be served concurrently. However, this court, as noted above, is remanding this case to the trial court with instructions to resentencing Roscoe pursuant to R.C. 2911.02(A)(2).

### III. Conclusion

{¶53} Appellant's convictions for aggravated robbery under both R.C. 2911.01(A)(1) and 2911.01(A)(3), his conviction for having a weapon while under disability under R.C. 2923.13(A)(2) as well as his convictions for all the indicted firearm specifications are not supported by the record. However, this court enters judgment against Roscoe for robbery, R.C. 2911.02(A)(2). Appellant's remaining convictions are not against the manifest weight of the evidence. Finally, our analysis above renders moot Roscoe's argument concerning consecutive sentencing. This case, however, is remanded to the trial court with instructions to resentence Roscoe pursuant to R.C. 2911.02(A)(2).

{¶54} Affirmed in part and reversed in part.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN A. GALLAGHER, JUDGE

MARY EILEEN KILBANE, J., CONCURS;
FRANK D. CELEBREZZE, JR., P.J., CONCURRING
IN PART AND DISSENTING IN PART WITH
SEPARATE OPINION ATTACHED

FRANK D. CELEBREZZE, JR., P.J., CONCURRING IN PART AND DISSENTING IN PART:

{¶55} I agree with the majority's disposition of appellant's alleged errors regarding his rape convictions. I also agree with the majority's holding that sufficient evidence of physical harm does not exist to sustain a conviction for aggravated robbery on Count 6. However, I would treat it the same as the majority does the aggravated robbery conviction in Count 5 and find appellant guilty of the lesser-included offense of robbery. However, I must dissent from the majority's decision on Count 5 and the other convictions and specifications involving the use of a firearm. In my view, the state offered sufficient evidence that appellant possessed a firearm during the course of these crimes.

{¶56} Here, the fact that appellant possessed a firearm can be inferred from C.B.'s testimony. She testified appellant pressed a small, cold, hard object to her neck contemporaneously with a demand by an accomplice to relinquish her property. She testified that appellant pressed the object to her neck, and the other man said, "give me [your] money." Although appellant did not say anything to indicate he had a gun, the co-conspirator's demand for C.B.'s money that occurred contemporaneously with appellant's action of pressing an object to her neck demonstrate that the actions of the two men created the belief in the victim that appellant possessed a gun. C.B. felt the object against her skin, and she believed the object was a gun. The two men used the object to induce a fear in C.B. that she would be killed if she did not surrender her property. Therefore, the fact that the object was a gun can be inferred from the surrounding circumstances — C.B.'s belief and appellant's use of the object.

{¶57} In a similar case where a rape victim never actually saw a firearm used during the commission of the crime, the Second District determined that circumstantial evidence, including "a victim's belief that the weapon is a gun, together with the intent on the part of the accused to create and use that belief for his own criminal purposes, is sufficient to prove a firearm specification." *State v. Greathouse*, 2d Dist. Montgomery No. 21536, 2007-Ohio-2136, ¶ 19. There, a victim was car jacked and kidnapped. The assailant threatened to shoot and kill the victim as he drove around in her car and eventually raped her. The victim never saw a firearm, but the assailant was convicted of aggravated robbery and a firearm specification at trial, and the Second District affirmed.

*Id*.   The Second District relied on the same evidence of inducing a belief that the assailant possessed a firearm to affirm an aggravated robbery conviction under R.C. 2911.01(A)(1).   *Id*. at ¶ 23.

**{¶58}** This court also came to the same conclusion when faced with only testimony as to an object's use as a firearm.   *State v. Fulton*, 8th Dist. Cuyahoga No. 96156, 2011-Ohio-4259.   There, this court found sufficient evidence to support a firearm specification where

> Gill [a victim] testified that [an accomplice] put what she believed to be a gun to her back; it was hard, blunt, and burned her back when he pressed it into her.   Gill and Buck [another victim] testified that [the accomplice] said to Buck, "if you don't get out of your truck right now, I'm going to shoot her."   Buck also testified that although he never actually saw the gun, he saw what looked like the tip of a gun in [the accomplice's] hand, under his sleeve.

**{¶59}** This case is also similar to another involving armed robbery, where this court upheld a firearm specification where the victim never saw the firearm used.   *State v. Watkins*, 8th Dist. Cuyahoga No. 84288, 2004-Ohio-6908.   There, Watkins pressed an object into the victim's back while stating, "you know, what it is."   This court determined that the jury could reasonably determine that the phrase indicated what was being pressed into the victim's back and that Watkins was attempting to rob the victim. "[Watkins's] actions and statements implied that the object in the victim's side was a gun and that it would be used if the victim did not cooperate."   *Id*. at ¶ 23.   This is precisely the situation in the present case.

{¶60} Here, the statement indicating that appellant possessed a firearm did not come from appellant, but from his co-conspirator, who stated, "give me [your] money" as appellant pressed an object to the victim's neck, which she testified she believed was a gun. This distinction should not lead to a different result. Courts have no problem attributing actions of co-conspirators between the conspiring parties in other contexts, but the majority does not do so here. There is no logic to this distinction. Under the majority's view, as long as two people commit armed robbery where one presses an unseen gun into the victim's back and the other demands property, an aggravated robbery conviction will not result. This is not the law. In fact, it makes little sense where accomplices may be convicted of aggravated robbery where they do nothing. *See State v. Minter*, 12th Dist. Butler No. CA2009-06-150, 2010-Ohio-594, ¶ 15, fn. 1 ("a defendant may be convicted of an offense, which includes a firearm specification, where his codefendant or uncharged accomplice utilized a firearm in the commission of the offense and the defendant is found to have acted as an accomplice").

{¶61} Further, the case the majority feels is most similar, *State v. Evans*, 8th Dist. Cuyahoga No. 85396, 2005-Ohio-3847, specifically lists as appropriate evidence whether "the victim *felt an object* or saw a shape *which could be construed as a gun * * *.*" (Emphasis added.) *Id*. at ¶ 54. In that case, there was no evidence that the defendant possessed a firearm other than the victim's testimony that the defendant had his hand in his pocket. That is hardly similar to the present case.

**{¶62}** Here, the victim felt an object pressed directly against her skin. She did not feel it through layers of clothing, as in *Watkins*. She felt it, and she perceived it as a gun. It brought about sobbing appeals for mercy during which she pled with appellant and his accomplice not to kill her. She even asked that her driver's license be returned to her because she was afraid she would be killed and left unidentified. Appellant's actions and those of his accomplice created the reasonable belief in C.B. that appellant possessed a gun.

**{¶63}** This court must "evaluate the evidence of a firearm's operability by examining the totality of the circumstances." *State v. McElrath*, 114 Ohio App.3d 516, 519, 683 N.E.2d 430 (9th Dist.1996), citing *State v. Murphy*, 49 Ohio St.3d 206, 208, 551 N.E.2d 932 (1990). "In *McElrath*, this Court found that in cases where no shots are fired and the firearm is not recovered, circumstantial evidence, such as the representations and actions of the gun operator, are of crucial importance." *Fulton*, 8th Dist. Cuyahoga No. 96156, 2011-Ohio-4259, at ¶ 30. Viewing the totality of the circumstances and imputing the statements made by the accomplice to appellant, sufficient evidence that appellant possessed a firearm exists in this record.

**{¶64}** Accordingly, I would affirm appellant's aggravated robbery conviction in Count 5, all the gun specifications, and the conviction for having a weapon while under disability.