[Cite as *State v. Brown*, 2019-Ohio-313.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 106667

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**COREY BROWN**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-615206-A

**BEFORE:** Celebrezze, J., Boyle, P.J., and Yarbrough, J.*

**RELEASED AND JOURNALIZED:** January 31, 2019

**ATTORNEY FOR APPELLANT**

David L. Doughten
David L. Doughten Co., L.P.A.
4403 St. Clair Avenue
Cleveland, Ohio 44103


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Anne Kiran Mikhaiel
          Gregory J. Ochocki
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Corey Brown ("appellant"), brings this appeal challenging his convictions for rape, kidnapping, aggravated burglary, aggravated robbery, and tampering with evidence.    Specifically, appellant argues that the trial court erred by not properly informing him of his right to testify in his defense, and that his convictions for the three-year and one-year firearm specifications were against the manifest weight of the evidence.    After a thorough review of the record and law, this court affirms.

## I.    Factual and Procedural History

{¶2} The instant matter arose from an incident on November 7, 2015, where appellant, and an unidentified male, broke into the home of the victim, K.W., in the middle of the night. Appellant and the male stole K.W.'s possessions, forced her to perform oral sex, and vaginally raped her.

{¶3} On the night of November 6, 2015, K.W. had some family come over her house on the east side of Cleveland to celebrate her upcoming birthday. K.W. had some alcoholic drinks with her family members and eventually went to sleep around 12:30 a.m. At approximately 4:00 a.m., K.W. woke up to appellant and the unidentified male in her bedroom. These two males each had on hooded sweatshirts with the hoods pulled tight around their faces. K.W. was only able to see the males' eyes and noses. K.W. described one male as a "light-skinned guy with a gray hoodie" who was holding a chrome revolver to K.W.'s head. K.W. described the second male as "a dark-skinned guy with a blue hoodie" and this male was also holding a black revolver. The light-skinned male told K.W. to "get up" and "go downstairs."

{¶4} The two males forced K.W. downstairs at gunpoint. While downstairs, the two males ransacked K.W.'s home searching for property to steal. At this point, the dark-skinned male made sexual remarks to K.W. K.W. then told the two males that she had to use the downstairs bathroom. The dark-skinned male followed K.W. into the bathroom and forced his penis into K.W.'s mouth.

{¶5} The two males then forced K.W. back upstairs to her bedroom and ransacked her bedroom searching for additional property to steal. At this time, the light-skinned male raped K.W., forcing his penis into K.W.'s vagina, while the dark-skinned male continued to search the bedroom. The dark-skinned male remarked to the light-skinned male "you fried," indicating that the light-skinned male was acting foolish or ridiculous. The dark-skinned male then forced himself on K.W. and forced his penis into her vagina, while the light-skinned male then forced his penis into K.W.'s mouth.

{¶6} The males then fled the home. The males had stolen K.W.'s cell phone so K.W. ran to a neighbor's house, and the neighbor called 911.

{¶7} Subsequently, on March 15, 2017, the Cuyahoga County Grand Jury returned a ten-count indictment charging appellant with: (1)-(3) rape, in violation of R.C. 2907.02(A)(2); (4) aggravated burglary, in violation of R.C. 2911.11(A)(1); (5) aggravated burglary, in violation of R.C. 2911.11(A)(2); (6) kidnapping, in violation of R.C. 2905.01(A)(4); (7) aggravated robbery, in violation of R.C. 2911.01(A)(1); (8) aggravated robbery, in violation of R.C. 2911.01(A)(3); (9) theft, in violation of R.C. 2913.02(A)(1), and (10) tampering with evidence, in violation of R.C. 2921.12(A)(1). All counts, except the theft count, had accompanying three-year and one-year firearm specifications in violation of R.C. 2941.145 and 2941.141. Appellant entered a plea of not guilty during his March 29, 2017 arraignment.

{¶8} The matter proceeded to a jury trial. After the state's presentation of its case in chief, appellant moved for a judgment of acquittal pursuant to Crim.R. 29 on the theft count, arguing that the state did not present evidence that the property constituting the offense amounted to a value of $1,000 or greater. The trial court agreed and granted appellant's motion. The trial court amended the theft count to a first-degree misdemeanor. Thereafter, the jury returned a verdict of guilty on all ten counts, including the amended theft count. Appellant was sentenced to an aggregate prison term of 20 years.

{¶9} Appellant brings the instant appeal raising two assignments of error for our review.

I. The trial court failed to ensure that [appellant] knowingly, intelligently and voluntarily waived his right to testify as established by the Fourteenth Amendment to the United States Constitution.

II. The evidence that [appellant] possessed or used a firearm pursuant to R.C. 2941.141 and [2941.145] to facilitate the charges against him is against the weight of the evidence.

## II.  Law and Analysis

### A.  Right to Testify

{¶10} In his first assignment of error, appellant argues that the trial court erred by not properly informing him of his right to testify in his defense. More specifically, appellant argues that the trial court failed to ensure that he knowingly, intelligently, and voluntarily waived his right to testify as established by the Fourteenth Amendment to the United States Constitution. To this end, appellant asserts that the trial court failed to inquire as to whether appellant understood that he had "an absolute right to testify or not testify under the state and federal constitution." Appellant's brief at 8.

{¶11} First, we note that appellant's use of the "knowingly, intelligently, and voluntarily" verbiage is associated with a Crim.R. 11 plea colloquy and has no relation to an accused's "right to testify." Indeed, appellant cites to no authority that requires a trial court, prior to a defendant presenting his or her case in chief, to inquire with a defendant as to whether they understand that they have a "right to testify."

{¶12} Nevertheless, in support of his argument, appellant cites to a recent United States Supreme Court case, *McCoy v. Louisiana,* 584 U.S. ___, 138 S.Ct. 1500, 200 L.Ed.2d 821 (2018). The issue in *McCoy* pertained to whether McCoy's Sixth Amendment rights were violated during the guilt and sentencing phases of McCoy's capital murder trial. McCoy was charged with capital murder for murdering his estranged wife's mother, stepfather, and son. McCoy was found guilty of the three murders. As the court noted:

> [McCoy's counsel's] strategy was to concede that McCoy committed the murders, but argue that McCoy's mental state prevented him from forming the specific intent necessary for a first-degree murder conviction. Over McCoy's repeated objection, [McCoy's counsel] told the jury McCoy was the killer and that [McCoy's counsel would take] "[the] burden off of [the prosecutor]" on that issue. McCoy testified in his own defense, maintaining his innocence and pressing an alibi difficult to fathom. The jury found him guilty of all three first-degree murder counts. At the penalty phase, [McCoy's counsel] again conceded McCoy's guilt, but urged mercy in view of McCoy's mental and emotional issues.

The jury returned three death verdicts. Represented by new counsel, McCoy unsuccessfully sought a new trial. The Louisiana Supreme Court affirmed the trial court's ruling that [McCoy's counsel] had authority to concede guilt, despite McCoy's opposition.

*McCoy* at syllabus.

{¶13} We note that *McCoy* pertains to an incredibly narrow issue: that it is a defendant's choice, not his counsel's, to decide on the objective of his defense. The United State Supreme Court further outlined this narrow issue as follows:

> [A] defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. Guaranteeing a defendant the right "to have the Assistance of Counsel for his [defense]," the Sixth Amendment so demands. With individual liberty—and, in capital cases, life—at stake, it is the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt.

*Id.* Therefore, the issue in *McCoy* is of no relevance to the present issue of whether or not a trial court is required to inform a defendant, *prior to testifying*, that he or she has a right to testify or not to testify on his or her own behalf at trial. We therefore find that *McCoy* is inapplicable to the instant matter.

{¶14} We note that appellant's arguments have been previously addressed, and rejected, by the Ohio Supreme Court in *State v. Bey*, 85 Ohio St.3d 487, 709 N.E.2d 484 (1999). "Generally, the defendant's right to testify is regarded both as a fundamental and a personal right that is waivable only by an accused." *Id.* at 499. "[A] trial court is not required to conduct an inquiry with the defendant concerning the decision whether to testify in his [or her] defense." (Emphasis deleted.) *Id.* *See State v. Harrison,* 8th Dist. Cuyahoga No. 93132, 2010-Ohio-2778, ¶ 44. Accordingly, because "a trial court is not required to advise a defendant

of his [or her] right to testify, the trial court's failure to do so cannot constitute error." *Bey* at 500.

**{¶15}** In the instant matter, we find nothing in the record that suggests appellant wanted to testify and his counsel refused to allow him to testify. Nor do we find anything within the record to suggest that appellant was unaware of his right to testify. Furthermore, nothing in the record suggests that appellant's counsel failed to advise him of his right to testify.

**{¶16}** To the extent that appellant argues that he suffers from a low IQ and "it would have been even more essential that the court ensure he understood his trial rights and the nature of what he was waiving," we find no merit to this argument. Pursuant to R.C. 2945.37(B), "[i]n a criminal action in a court of common pleas, * * * the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section." "A defendant is presumed to be competent and has the burden of proving his incompetency by a preponderance of the evidence." *State v. McNeir*, 8th Dist. Cuyahoga No. 105417, 2018-Ohio-91, ¶ 23, citing *State v. Williams*, 23 Ohio St.3d 16, 28, 490 N.E.2d 906 (1986). Therefore, a defendant is incompetent if he "is incapable of understanding the nature and objective of the proceedings against [him] or of assisting in [his] defense." R.C. 2945.37(G).

**{¶17}** We find that the issue of appellant's competency was not properly raised by his counsel, and we find no evidence of his incompetency within the record. Moreover, we note that the trial court in this case actually did instruct appellant regarding his right to testify. The following exchange occurred between the trial court and appellant at the close of the state's case in chief:

THE COURT: Okay. All right. So then why don't I ask you,

[appellant's counsel] as this is the [s]tate's last witness, if you know whether or not [appellant] intends to testify.

[Appellant's counsel]:   I discussed the matter with [appellant], as well as his parents, [j]udge, and he does not wish to testify at this time.

THE COURT:   Okay.   Now, you had ample time to talk to him about whether or not he wishes to testify?

[Appellant's counsel]:   That is correct.

THE COURT:   All right.   So, [appellant] you have had an opportunity to speak to your lawyer about whether or not you wish to testify in this case?

[Appellant]:   Yes, your Honor.

THE COURT:   And is it your decision that you do not wish to testify?

[Appellant]:   Yes, your Honor.

THE COURT:   Okay.   And have you had enough time to talk to your lawyer about whether or not you wish to testify?

[Appellant]:   Yes, your Honor.

THE COURT:   And do you need any additional time?

[Appellant]:   Yes — I mean, no, your Honor.

(Tr. 553-554.)   As such, notwithstanding the fact that a trial court is not required to advise a defendant of his or her right to testify, the trial court in the instant matter did actually advise appellant of his right to testify.   Further, to the extent that appellant argues that the trial court did not properly inform him of this right to testify, we find that the above exchange more than sufficiently informed appellant of his right to testify.   Lastly, to the extent that appellant argues that the trial court did not ensure that appellant waived his right to testify, we also find the above exchange established that appellant waived his right to testify.

{¶18} Accordingly, appellant's first assignment of error is overruled.

## B. Manifest Weight

{¶19} In appellant's second assignment of error, he argues that his convictions on the three-year and one-year firearm specifications were against the manifest weight of the evidence.

{¶20} A manifest weight challenge to a conviction questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. Therefore, a reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶21} Although we review the credibility of witnesses when considering a manifest weight challenge, we recognize that determinations regarding credibility and the weight of a witness's testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Undeniably, the trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may detect any number of inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶22}** In support of his manifest weight challenge, appellant argues that there exists no "credible evidence that a firearm was used to facilitate th[e] sex act[s] or that [appellant] possessed a firearm[.]" Appellant's brief at 14. Appellant asserts that the lack of physical evidence of a firearm supports this contention. More specifically, appellant argues because there was no firearm recovered and there was no physical evidence of a firearm at the crime scene, his convictions are against the manifest weight of the evidence.

**{¶23}** First, we note that appellant's arguments regarding a lack of physical evidence are immaterial. K.W. did not testify that either appellant or the unknown male discharged either firearm. Nor did she testify that the two males left either firearm behind. Therefore, any argument before this court asserting a lack of physical evidence of a firearm is without merit.

**{¶24}** Second, appellant asserts that because there existed no physical evidence of a firearm, the evidence of a firearm was only circumstantial and his convictions are therefore against the manifest weight of the evidence. Appellant does not argue that the weight of the circumstantial evidence weighed heavily against his convictions. He simply asserts that because there existed only circumstantial evidence, rather than direct evidence, the convictions are against the manifest weight of the evidence. We reject this argument because it is in direct conflict with well-established law.

**{¶25}** The firearm specification is described within R.C. 2941.141(A) and 2941.145(A). R.C. 2941.145(A), states in pertinent part:

> the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense.

R.C. 2941.141(A), states in pertinent part, that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." In defining the term "firearm," R.C. 2923.11(B)(1) states:

> "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

Moreover, pursuant to R.C. 2923.11(B)(2), when determining whether a firearm is operable, "the trier of fact may rely upon *circumstantial* evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." (Emphasis added.)

{¶26} The Ohio Supreme Court has further elaborated on the issue:

> A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm.

(Citations omitted.) *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, at paragraph one of the syllabus.

{¶27} Proof of a firearm in support of a firearm specification "can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime." *State v. Murphy*, 49 Ohio St.3d 206, 209, 551 N.E.2d 932 (1990). As this court has previously stated, "[t]he body of cases on this issue hold that either the assailant was in possession of a firearm and made statements of his ability, or intent, to use it to cause physical harm or that the offender intimated that (s)he possessed it, without brandishing it and contemporaneously made statements of his/her ability to

cause harm with a firearm." *State v. Roscoe*, 8th Dist. Cuyahoga No. 99113, 2013-Ohio-3617, ¶ 31.

**{¶28}** Recently, in *State v. Cummings,* 8th Dist. Cuyahoga No. 106458, 2018-Ohio-4214, this court upheld a conviction based upon a sufficiency challenge where there existed sufficient evidence to show that the defendant ordered the victim to empty his pockets while placing the gun to the victim's chest. This court further noted that "[t]he implicit threat while brandishing the gun so as to threaten [the victim] is sufficient to establish its operability." *Id.* at ¶ 22.

**{¶29}** In our review of the record, we find the instant matter analogous to *Cummings,* and find that appellant's convictions were not against the manifest weight of the evidence. K.W. testified that she was awoken in the middle of the night by intruders in her bedroom. K.W. specifically testified that she woke up with a gun to her head. Further, there was also a second male in K.W.'s bedroom who also had a gun in his hand. K.W., who is familiar with guns, testified that the male holding a gun to her head was a "light-skinned guy with a gray hoodie" and he had a chrome revolver pointed at her head. (Tr. 321.) The other male was "a dark-skinned guy with a blue hoodie" who was also holding a black gun that looked to K.W. like a black revolver. K.W. testified that the light-skinned male told her to "get up" and "go downstairs." (Tr. 321-322.)

**{¶30}** The two males then ordered K.W. down to the first floor of the house, each holding a handgun. While K.W. and the two males were downstairs, K.W. testified that the light-skinned male was stealing her TV and video game systems. As this was happening, the dark-skinned male "still had a gun to [K.W.] and he started sexually harassing [her]." (Tr. 324.) K.W. had to use the bathroom, and the dark-skinned male followed K.W. into the bathroom and forced his penis into her mouth.

**{¶31}** Based upon these facts, we find that appellant possessed, displayed, and brandished a firearm while committing the offenses pursuant to R.C. 2941.145(A). We also find that appellant had a firearm on his person and under his control while committing the offenses pursuant to R.C. 2941.141(A). Further, we also find that these facts sufficiently established the operability of the firearm. As such, appellant's convictions for the firearm specifications were not against the manifest weight of the evidence.

**{¶32}** After reviewing the record, we cannot say that this is "an exceptional case" in which the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's convictions were against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. The jury was in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections that are critical observations in determining the credibility of a witness and his or her testimony. *State v. Clark*, 8th Dist. Cuyahoga No. 94050, 2010-Ohio-4354, ¶ 17, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996), and *Antill*, 176 Ohio St. at 66, 197 N.E.2d 548. The jury "was free to believe all, part, or none of the testimony of each witness." *State v. Colvin*, 10th Dist. Franklin No. 04AP-421, 2005-Ohio-1448, ¶ 34; *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16.

**{¶33}** Accordingly, appellant's second assignment of error is overruled.

### III. Conclusion

**{¶34}** The trial court was not required to advise appellant of his right to testify. Nevertheless, the trial court did, in fact, advise appellant of his right to testify and appellant waived this right. As such, there was no error on the part of the trial court. Further, appellant's convictions for the firearm specifications were not against the manifest weight of the evidence

because circumstantial evidence established that appellant possessed, displayed, and brandished a firearm while committing the offenses he was convicted of.

**{¶35}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

MARY J. BOYLE, P.J., and
STEPHEN A. YARBROUGH, J.,* CONCUR

* (Sitting by Assignment: Retired Judge Stephen A. Yarbrough of the Sixth District Court of Appeals.)