[Cite as *State v. Witterstaetter*, 2024-Ohio-191.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS.  CA2023-07-045 |
| | | CA2023-07-046 |
| - vs - | : | |
| | : | O P I N I O N |
| | : | 1/22/2024 |
| JAMES L. WITTERSTAETTER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2020 CR 0083; 2021 CR 0337

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

W. Stephen Haynes, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellant.

**S. POWELL, P.J.**

{¶ 1} Appellant, James L. Witterstaetter, appeals his convictions in the Clermont County Court of Common Pleas after he pled guilty in Case Nos. 2020 CR 0083 and 2021 CR 0337 to one count of first-degree felony aggravated burglary, one count of fourth-degree felony gross sexual imposition, and one count of fifth-degree felony assault on a corrections

officer.  For the reasons outlined below, we affirm Witterstaetter's convictions.

{¶ 2}  On April 27, 2023, the trial court held a joint plea hearing where Witterstaetter pled guilty in Case Nos. 2020 CR 0083 and 2021 CR 0337 to the three above-named felony offenses.  After engaging Witterstaetter in the necessary Crim.R. 11(C) plea colloquy, which included informing Witterstaetter of, and determining that Witterstaetter understood, the effect a guilty plea serves as a complete admission of the defendant's guilt, the trial court accepted Witterstaetter's guilty pleas to all three offenses.  The trial court did this upon finding Witterstaetter's guilty pleas to each of those three offenses had been knowingly, intelligently, and voluntarily entered.

{¶ 3}  On June 7, 2023, the trial court held a joint sentencing hearing where it sentenced Witterstaetter to an indefinite, aggregate sentence of ten to 14-and-one-half years in prison, less 1,244 days of jail-time credit.[1]  The trial court also classified Witterstaetter a Tier I sex offender, ordered Witterstaetter to pay court costs, and notified Witterstaetter that he would be subject to a mandatory, maximum five-year postrelease control term upon his release from prison.  Witterstaetter now appeals his convictions in Case Nos. 2020 CR 0083 and 2021 CR 0337, raising the following single assignment of error for review.

{¶ 4}  APPELLANT'S GUILTY PLEA WAS NOT KNOWINGLY, INTELLIGENTLY,

---

1. Constituting his indefinite, aggregate ten to 14-and-one-half year prison sentence, the trial court sentenced Witterstaetter to a minimum of nine years with a maximum of 13-and-one-half years in prison for the first-degree felony aggravated burglary offense, during which he would also be serving a concurrent 17-month prison term for the offense of fourth-degree felony gross sexual imposition, that he would then follow up by serving a consecutive 12 months in prison for the fifth-degree felony assault on a corrections officer offense. A search of the Ohio Department of Rehabilitation and Correction's website, of which we can take judicial notice, shows that Witterstaetter has an expected release/parole eligibility date of January 7, 2030. *See generally State v. Williams*, 12th Dist. Butler Nos. CA2018-01-012 and CA2018-01-013, 2018-Ohio-3989, ¶ 12, fn.1 ("[t]his court has previously determined that we may take judicial notice of the Ohio Department of Rehabilitation and Correction's website to determine if a defendant is incarcerated and his or her date of release").  The results of this court's search of the ODRC website can be found at https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A817031 (last accessed Jan. 19, 2023).

OR VOLUNTARILY ENTERED.

{¶ 5} In his single assignment of error, Witterstaetter argues the trial court erred by finding the guilty pleas he entered in Case Nos. 2020 CR 0083 and 2021 CR 0337 were knowingly, intelligently, or voluntarily made. We disagree.

{¶ 6} "When a defendant enters a guilty plea to a felony, the plea must be knowingly, intelligently, and voluntarily entered." *State v. Cross*, 12th Dist. Butler No. CA2021-11-135, 2022-Ohio-2094, ¶ 5, citing *State v. Gabbard*, 12th Dist. Butler No. CA2020-12-125, 2021-Ohio-3646, ¶ 12. That is to say, "[a] defendant's plea in a criminal case is invalid if not made knowingly, intelligently, and voluntarily." *State v. Eckler*, 12th Dist. Butler No. CA2019-02-035, 2019-Ohio-4828, ¶ 7. "'Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'" *State v. Tipton*, 12th Dist. Madison No. CA2020-05-011, 2021-Ohio-1128, ¶ 10, quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996).

{¶ 7} "Crim.R. 11(C) prescribes the process that a trial court must use before accepting a plea of guilty to a felony." *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, ¶ 11. "The rule 'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *State v. Murphy*, 12th Dist. Butler No. CA2021-05-048, 2021-Ohio-4541, ¶ 8, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975). This requires the trial court to notify the defendant of the constitutional rights set forth in Crim.R. 11(C)(2)(c) and to make the required determinations and give the necessary warnings set forth in Crim.R. 11(C)(2)(a) and (b). *State v. Oliver*, 12th Dist. Clermont No. CA2020-07-041, 2021-Ohio-2543, ¶ 41. This includes the trial court "[i]nforming the defendant of and determining that the defendant understands the effect of

the plea of guilty * * *." Crim.R. 11(C)(2)(b). The effect of the plea of guilty is "a complete admission of the defendant's guilt." Crim.R. 11(B)(1).

{¶ 8} Witterstaetter argues that, when considering the happenings that took place during his joint plea hearing, it cannot be said with any certainty that he "subjectively understood" the effect of entering any of his three guilty pleas. More specifically, Witterstaetter argues that when reviewing the totality of the circumstances surrounding his joint plea hearing, it is evident that he did not understand what entering a guilty plea meant or the consequences of entering a guilty plea. To support this claim, Witterstaetter cites several instances in the plea hearing transcript where it appears that he either "did not comprehend what was occurring" or did not understand what was being said. This includes Witterstaetter repeatedly claiming that he did not understand what was happening, where he was, who he was, or seemingly whether he even had a hand to write with. Therefore, whether it be from the medication he was taking or simply his overall mental condition, Witterstaetter argues that he "did not sufficiently understand to what he was pleading, the effects of his pleas, nor the constitutional rights he was waiving."[2]

{¶ 9} However, although we agree that there were many occasions where Witterstaetter indicated that he did not fully comprehend what was happening, what he was supposed to do, what his own name was, or even whether he had all of his appendages, the trial court found this all to be an act that was apparently inspired by Witterstaetter's discussions with his mother. What is more, and what we find particularly interesting, is the fact that Witterstaetter never expressed a desire to do anything other than enter a guilty plea. This includes Witterstaetter's trial counsel advising the trial court that he spoke with

---

2. The record indicates Witterstaetter was at that time taking daily doses of Motrin, Fish Oil, Risperdal, and Ativan.

Witterstaetter the day before and, throughout the entire time that they had talked, Witterstaetter "was clear, he was thoughtful and he made a knowingly and intelligent decision to enter into a guilty plea." Witterstaetter's counsel also noted that "[t]here were no signs of malingering at that time," that Witterstaetter had "been through discovery with counsel and I believe his prior counsel did so as well," and that they:

> had a clear and thoughtful conversation about the risks of going to trial and what a guilty plea would look like, what charges he would be pleading guilty to, the potential penalties and the cap that the State has graciously offered us if he does enter into a guilty plea.

{¶ 10} Upon hearing this, the trial court then turned to Witterstaetter and asked, "is that what you want to do or you don't?" To this, Witterstaetter said, "I just want to --- yeah, I just want to plead guilty." Shortly thereafter, when Witterstaetter indicated that he had decided to plead guilty just so that he could "get out of jail," the trial court advised Witterstaetter that being released from jail was "not part of it." Rather than getting out of jail, the trial court notified Witterstaetter that it was instead a choice between him pleading guilty or going to trial, "[t]hat's all we got." Just as before, Witterstaetter again responded and stated that he just "want[ed] to plead" and "want[ed] to plead out."

{¶ 11} Following this exchange, the trial court asked Witterstaetter one more time what he wanted to do, plead guilty or take the matter to trial? Witterstaetter said, "I'm pleading out, Your Honor," and "I'm pleading out and ready to go." Then, after a discussion with the trial court as to why he had to sign anything when he was "just tak[ing] a plea," Witterstaetter also agreed to sign the requisite guilty plea forms, advising the trial court that he was "ready to just enter a plea. Enter a guilty plea." Witterstaetter additionally indicated to the trial court that he understood the nature and underlying circumstances of the three felony offenses to which was pleading guilty, as well as the maximum penalty that he faced

for each of those three felony offenses. This was in addition to Witterstaetter noting that he understood the effect of a guilty plea was a complete admission of guilt, "[i]t means you're saying you did it."

{¶ 12} Specifically, when asked by the trial court if he understood by pleading guilty that he would be "making a complete admission of guilt that you committed those offenses. You're admitting you did that," Witterstaetter stated, "Yeah, I understand." Witterstaetter also responded, "Yeah," when asked by the trial court if he understood that by entering a guilty plea to all three offenses that he would be "accepting responsibility for those crimes, yes or no?" Witterstaetter further advised the trial court that, although he was "really hyped up" and "really worried" about what might happen to him at sentencing, he was nevertheless "sober and all that," that he understood what was happening, and that agreeing to plead guilty was "just [his] choice," absent any threats or outside pressure.

{¶ 13} Witterstaetter additionally noted that, although he did not like the registration requirements associated with being classified as a Tier I sex offender, he nonetheless understood what would be required of him. This was in addition to Witterstaetter advising the trial court that he was satisfied with his trial counsel's representation of him, and that his trial counsel had "been clear enough" when answering his questions. This ultimately resulted in Witterstaetter admitting that he had committed the first-degree felony aggravated burglary charge, "[t]hat's why I'm saying I'm guilty, you know," because "I took too much shit," that he was "[g]uilty, guilty, guilty, guilty, guilty" and did not "know what the fuck [he] was thinking" in regard to the charge of fourth-degree felony gross sexual imposition, and that, "Yeah, I'm ready. I'm guilty, man," to the charge of fifth-degree felony assault on a corrections officer.

{¶ 14} Under these circumstances, we find no error in the trial court's decision to

- 6 -

accept the three guilty pleas Witterstaetter entered in Case Nos. 2020 CR 0083 and 2021 CR 0337 upon finding Witterstaetter's guilty pleas were knowingly, intelligently, and voluntarily made. In so holding, we note that Witterstaetter's "good faith and credibility were matters for the trial court, who could evaluate his demeanor, voice inflection, gestures, and other indicators of untruthfulness." *State v. Unger*, 7th Dist. Mahoning No. 22 MA 0089, 2023-Ohio-3334, ¶ 20. This would include the trial court's determination that Witterstaetter's antics were all just part of "a show," a change in his "perception" and his "progress," that he would seemingly put on after speaking with his mother. We also note that it was Witterstaetter's trial counsel who requested the trial court to hold the aforementioned joint plea hearing after Witterstaetter advised counsel earlier that same day that he was ready to plead out.

{¶ 15} We further note that, given Witterstaetter's unusual behavior at the joint plea hearing, the trial court went above and beyond to ensure that it had notified Witterstaetter of his constitutional rights set forth in Crim.R. 11(C)(2)(c) and make the required determinations and give the necessary warnings to Witterstaetter as provided in Crim.R. 11(C)(2)(a) and (b). This was no easy task given Witterstaetter's repeated interruptions, incoherent ramblings about his mother, his inability to continue building houses while in jail, his love for "being out there in the real world," and his purported movie making prowess. This is in addition to Witterstaetter's incessant, unfounded claims that he could not hear what was being said despite Witterstaetter being able to provide appropriate, context-based responses to each of the trial court's questions. Therefore, given the record properly before this court, Witterstaetter's single assignment of error lacks merit and is overruled.

{¶ 16} Judgment affirmed.

HENDRICKSON and BYRNE, JJ., concur.