[Cite as *State v. Rucker*, 2025-Ohio-1012.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-11-027 |
| | : | O P I N I O N |
| - vs - | | 3/24/2025 |
| | : | |
| ANTHONY B. RUCKER, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20240148


Jess Weade, Fayette County Prosecuting Attorney, and Rachel S. Martin, Assistant Prosecuting Attorney, for appellee.

Steven H. Eckstein, for appellant.


**SIEBERT, J.**

{¶ 1} Appellant, Anthony Rucker, pled guilty to multiple charges in the Fayette County Court of Common Pleas, including kidnapping in violation of R.C. 2905.01, a first-degree felony.[1] Following a thorough review, we find the trial court complied with its

---

1. Rucker also pled guilty to failure to comply with an order or signal of a police officer, grand theft of a motor vehicle, and aggravated possession of drugs. However, he only challenges the validity of his guilty plea to the kidnapping charge.

responsibilities to inform Rucker of his constitutional rights and the consequences of his plea. Rucker's arguments he did not knowingly, intelligently, and voluntarily plead guilty to these charges fail. We affirm.

**Facts and Procedural History**

{¶ 2}   Gregory Cogdill briefly went inside the TA truck stop in Fayette County, Ohio and left his vehicle running outside. Cogdill's juvenile daughter was asleep in the back seat of the vehicle. She had her air pods in her ears; they were connected to her phone. Although Cogdill thought he had locked the vehicle before going into the truck stop, he was unaware the vehicle could not be locked while the engine was running.

{¶ 3}   Enter Rucker—who stole the running vehicle with Cogdill's daughter still in the back seat. Upon returning outside and realizing his daughter and car were missing, Cogdill immediately called 911. Working with the dispatcher, Cogdill was able to call his daughter's cell phone, waking her up. Using her air pods, Cogdill's daughter discreetly communicated with both the dispatcher and her father, providing real-time updates. She provided mile markers, took photographs of Rucker, and made various observations that allowed law enforcement to track her location. Cogdill's daughter begged Rucker to stop the vehicle and let her out. All this quick thinking and bravery was recorded on the emergency dispatch call.

{¶ 4}   Eventually, Rucker pulled over and let her out on the side of Palmer Road, described in the State's brief as a "country road." Shortly thereafter, a deputy spotted Rucker driving the stolen vehicle and initiated a pursuit. The chase ended when Rucker and the deputy collided, causing the airbags in both vehicles to deploy. Following the crash, the deputy arrested Rucker and found him to be in possession of methamphetamine.

{¶ 5}   The State indicted Rucker on two counts of kidnapping, one count of failure

- 2 -

to comply with an order or signal of a police officer, one count of grand theft of a motor vehicle, and one count of aggravated possession of drugs. He was arraigned and appointed a public defender.

{¶ 6} Following plea negotiations, Rucker pled guilty to the charges listed in the indictment, including one kidnapping charge, which was a felony in the first degree. The State agreed to dismiss the second count of kidnapping. At the plea hearing, the court recited the plea agreement onto the record, completed its notification requirements under Crim.R. 11, and asked the State to read the statement of facts into the record, which it did. Rucker agreed the State's recitation accurately described what happened and that a guilty plea would admit those facts. The trial court accepted Rucker's plea, found it was "knowing, voluntary, and intelligent," and imposed the agreed upon sentence.

{¶ 7} Rucker timely appeals, raising a single assignment of error for review.

**Appeal**

{¶ 8} THE TRIAL COURT ERRED IN ACCEPTING A GUILTY PLEA TO KIDNAPPING, A FELONY OF THE FIRST DEGREE, WITHOUT SUFFICIENT INQUIRY AS TO WHETHER THE PLEA WAS KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY GIVEN IN VIOLATION OF THE DEFENDANT-APPELLANT'S DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE OF THE OHIO CONSTITUTION.

{¶ 9} In support of his assignment of error, Rucker argues (1) the trial court did not conduct a sufficient inquiry as to an alleged "discrepancy" in the kidnapping charge, (2) his plea should have been treated as an *Alford* plea, and (3) he did not understand the charges at arraignment, and his counsel did not understand the charges or his

defenses. Rucker's arguments have no merit.[2]

{¶ 10} Before we address the trial court's alleged deficiencies in conducting Rucker's plea colloquy, we begin by summarizing what the trial court was required to do and how it complied with these requirements.

**Plea Colloquy Requirements**

{¶ 11} When a defendant pleads guilty to a crime, he makes a complete admission of his guilt. Crim.R. 11(B). By making this admission, he waives several important constitutional rights, including his right to a jury trial, to have the State prove his guilt beyond a reasonable doubt, to subpoena witnesses, to have his attorney question witnesses, and his right to remain silent and not be forced to testify. *See* Crim.R. 11(C)(2)(c). Because of the importance of the constitutional rights the defendant relinquishes by pleading guilty, the plea must be knowingly, intelligently, and voluntarily made. *See State v. Witterstaetter*, 2024-Ohio-191, ¶ 6 (12th Dist.). If the plea fails on any of these points, enforcement of the plea is unconstitutional under both the federal and state Constitutions. *State v. Ackley*, 2014-Ohio-876, ¶ 8 (12th Dist.).

{¶ 12} To ensure a guilty plea is enforceable under the Constitution, Ohio's Rules of Criminal Procedure prescribe a process the trial court must use before accepting a guilty plea to a felony. *State v. Bishop*, 2018-Ohio-5132, ¶ 11, citing Crim.R. 11(C). This rule requires the trial court to "personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made." *State v. Murphy*, 2021-Ohio-4541, ¶ 8 (12th Dist.). This requires the trial court to notify the defendant of the constitutional rights set forth in Crim.R. 11(C)(2)(c). *State v.*

---

2. Rucker asserts his due process rights under the United States Constitution and the Ohio Constitution were violated but makes no argument supporting how those alleged violations occurred. Pursuant to App.R. 12(A)(1)(b) and App.R. 16(A)(7), we do not address these undeveloped claims.

*Mills*, 2024-Ohio-3359, ¶ 12 (12th Dist.). This also requires the trial court to make the necessary determinations and give the defendant the necessary warnings set forth in Crim.R. 11(C)(2)(a) and (b). *Id.* The focus when enforcing Crim.R. 11(C) is not on whether the trial court recited the precise language set forth within the rule but instead "on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *State v. Tancak*, 2023-Ohio-2578, ¶ 16. Here, our review of the record finds the trial court complied with its requirements and responsibilities under the Constitution and the Rules.

{¶ 13} The trial court complied with the constitutional notifications by informing Rucker that by pleading guilty, he waived his constitutional right to a jury trial, to have the State prove his guilt beyond a reasonable doubt, to subpoena witnesses, to have his attorney question witnesses, and his right to remain silent and not be forced to testify. Rucker stated that he understood he would be giving up those rights with his guilty plea and that he wished to go forward with his plea. The trial court also complied with its nonconstitutional notice requirements by advising Rucker of the effect of his guilty plea and the maximum penalties that he faced. Rucker again stated that he understood. After agreeing with the State's recitation of facts, Rucker entered his guilty plea, which the trial court accepted, finding Rucker's plea was "knowing, voluntary, and intelligent." Our review of the record shows that Rucker's arguments to the contrary have no merit.

**Alleged "Discrepancy" in Charges**

{¶ 14} Rucker claims the trial court made an insufficient inquiry into a claimed "discrepancy" in the State's recitation of facts. Rucker asserts, without any support, that the State's recitation of facts included a statement that he released Cogdill's daughter "in a safe place, unharmed," which should have reduced the kidnapping count from a first-degree felony to a second-degree felony. *See* R.C. 2905.01(C). Relying on this claimed

discrepancy, Rucker contends "the inquiry of the trial court was insufficient to show a knowing, intelligent, and voluntary guilty plea."

{¶ 15} As an initial matter, the trial court was not required to explain the elements of a charge. Because a defendant waives the right to require the State prove his guilt beyond a reasonable doubt when he pleads guilty, the plea itself "provides the necessary proof of the elements of the crime and sufficient evidence to support the conviction." *State v. Arledge*, 2019-Ohio-3147, ¶ 15 (12th Dist.) (Citations omitted.). Therefore, the trial court had no obligation to make any further inquiry into the factual basis supporting Rucker's plea to felony kidnapping. *Id.* Outside of the small class of constitutional rights the trial court is required to advise the defendant about during a plea colloquy, "it is the responsibility of defense counsel" to inform the defendant about other statutory and constitutional rights he is waiving by a guilty plea. *State v. Fitzpatrick*, 2004-Ohio-3167, ¶ 57.

{¶ 16} Moreover, we find Rucker's argument regarding the State's recitation of facts to be misguided and inaccurate. Contrary to Rucker's position, the State did not assert that Rucker released the victim "in a safe place, unharmed." The assistant prosecutor merely stated that Rucker "did finally stop the vehicle on Palmer Road and allowed the victim to get out of the car." The prosecutor did not suggest or imply that Rucker left Cogdill's juvenile daughter in "a safe place, unharmed."

{¶ 17} First—"safe place." The prosecutor's statement does not show that the country road where Rucker left Cogdill's juvenile daughter was "safe." *See, e.g.*, *State v. Bowman*, 2006-Ohio-6146, ¶ 21 (10th Dist.) (the fact that the victim was released in a public park did not demonstrate the release was in a safe place). The prosecutor did not discuss whether, at the time and spot Rucker dropped the daughter along the road, this road was narrow or wide, the road had a lot of traffic, how fast vehicles were traveling

- 6 -

along this road, or how the lighting and weather conditions impacted the road's safety.

{¶ 18} Second—"unharmed." The prosecutor's statement does not indicate that Rucker's daughter was unharmed. In the context of the statute in question, "harm" includes both physical and psychological harm. *State v. Mohamed*, 2017-Ohio-7468, ¶ 14. In *Mohamed*, the facts revealed the kidnapper released the victim from his car, but a witness described her as "panicky, distraught, [and] scared" upon her release. *Id.* at ¶ 7. Here, the State's recitation of facts did not specify Cogdill's daughter was physically unharmed, nor did the recitation state she was psychologically unharmed. This Court has a hard time even imagining how a young girl who woke up to a stranger driving her away from her father would not be panicky, distraught, and scared, despite the bravery she exhibited during this ordeal.

{¶ 19} Regardless of the facts the State might have recited regarding whether the daughter was safe after being left on a country road and the status of her physical and psychological harm at that point, the record simply does not support Rucker's argument that the State's recitation of facts conclusively established that he released the young girl "in a safe place, unharmed."

{¶ 20} Neither the law nor the record supports Rucker's arguments regarding the factual recitation's alleged discrepancy and sentencing consequences.

### Alleged Alford Plea

{¶ 21} Rucker argues he entered an *Alford* plea. He did not. An *Alford* plea "is a qualified guilty plea in which a defendant voluntarily, knowingly, and understandingly pleads guilty to a charge while maintaining his or her innocence." *State v. Frazier*, 2024-

Ohio-2114, ¶ 1, fn. 1 (12th Dist.).[3] Rucker signed the written plea agreement which contained the unqualified statement that Rucker was withdrawing his "not guilty plea" and entering a "guilty plea" to the listed charges, including first-degree felony kidnapping. The written plea agreement makes no mention of an *Alford* plea, nor did Rucker assert any claim of innocence. During the plea hearing, Rucker stated that he was guilty and confirmed the State's recitation of facts:

> Judge: Mr. Rucker, is that what happened?
>
> Rucker: Yes, sir.
>
> Judge: You understand a guilty plea would admit those basic facts.
>
> Rucker: Yes, sir.
>
> Judge: And how do you plea?
>
> Rucker: Guilty.

{¶ 22} Accordingly, while Rucker now argues that he entered an *Alford* plea, the record belies that claim. *See State v. May*, 2021-Ohio-261, ¶ 16 (3d Dist.) (totality of the circumstances insufficient to characterize the plea as an *Alford* plea); *State v. Swoveland*, 2018-Ohio-2875, ¶ 18 (3d Dist.) (the record did not support the appellant's claim that he entered an *Alford* plea). Rucker's *Alford* plea argument fails.

### Alleged Lack of Understanding of Charges

{¶ 23} Finally, Rucker argues that he lacked an understanding of the charges against him at his arraignment. In support, Rucker refers to a portion of the transcript from his arraignment where he stated, "I do understand [the charges] but then I don't."

---

3. Though it is not relevant here, we note that such a plea generally requires the trial court to ascertain whether the defendant "has made a rational calculation that it is in his best interest to accept the plea bargain offered by the prosecutor." *Frazier* at ¶ 23. However, "a trial court is not required to directly inquire of the defendant to determine whether he has made a rational calculation to plead guilty." *State v. Satterwhite*, 2021-Ohio-2878, ¶ 19 (12th Dist.).

However, Rucker does not argue, and the record does not support, that he did not understand the charges at the time he pled guilty. The record reveals that at his plea hearing, Rucker affirmed he understood his waiver of constitutional rights, he was fully aware of the charges against him, and he was satisfied with his public defender. After confirming Rucker's understanding at multiple points during the plea colloquy, the trial court found Rucker entered a knowing, intelligent, and voluntary plea.[4] Rucker's reliance on an equivocal statement made at his arraignment is misplaced as it relates to his alleged lack of understanding at his plea hearing. The record supports the trial court's conclusion that Rucker understood the charges against him.

**Conclusion**

**{¶ 24}** After a thorough review of the record, we find the trial court properly advised Rucker in accordance with the Constitution and Crim.R. 11, and his plea was knowing, intelligent, and voluntary in all respects. We overrule Rucker's sole assignment of error. Therefore, we find the trial court did not err by accepting Rucker's guilty plea.

**{¶ 25}** Judgment affirmed.

BYRNE, P.J., and M. POWELL, J., concur.

---

4. We note that Rucker also claims he told the trial court at a pretrial hearing that he felt his public defender did not understand the charges against him or his defenses. The record does not support this claim either. While Rucker did request a new public defender, he never mentioned anything about his counsel not understanding the charges. Rucker instead told the trial court "I'm not trying to speak any kind of negative way, I just don't feel like she's in my best interest. So, we don't see eye to eye within my cases."